## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2017052500547004001E1CC0

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 88 |
|---|---|---|
| Document ID: 2017052500547004 | Document Date: 05-22-2017 | Preparation Date: 05-25-2017 |
| Document Type: AGREEMENT | | |
| Document Page Count: 86 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| NEW YORK LAND SERVICES/TO BE PICKED UP<br>630 THIRD AVENUE- 12TH FLOOR<br>NEW YORK, NY 10017<br>212-490-2277<br>TITLE NO. 16NYK12889 | NEW YORK COMMUNITY BANK<br>NYCB PLAZA<br>102 DUFFY AVENUE, 3RD FLOOR<br>HICKSVILLE, NY 11801<br>LOAN NO. 110694184 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 6108 | 22 | Entire Lot | 9201 4 AVENUE |
| Property Type: | COMMERCIAL REAL ESTATE | | | |

### CROSS REFERENCE DATA

BROOKLYN    Year: 1988    Reel: 2280    Page: 865
☒ Additional Cross References on Continuation Page

### PARTIES

| PARTY 1: | PARTY 2: |
|---|---|
| SPL PARTNERS LLC<br>540 ATLANTIC AVENUE, LOWER LEVEL<br>BROOKLYN, NY 11217 | NEW YORK COMMUNITY BANK<br>NYCB PLAZA, 102 DUFFY AVENUE, 5TH FLOOR<br>HICKSVILLE, NY 11801 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 16,400,000.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | 255 | | $ 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 467.00 | | |
| Affidavit Fee: | S | 8.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK

Recorded/Filed        05-31-2017 11:13
City Register File No.(CRFN):
2017000200593

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2017052500547004001C1E40

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 88 |
|---|---|

| Document ID: 2017052500547004 | Document Date: 05-22-2017 | Preparation Date: 05-25-2017 |
|---|---|---|

Document Type: AGREEMENT

---

**CROSS REFERENCE DATA**

BROOKLYN  **Year:** 1988   **Reel:** 2280   **Page:** 887
BROOKLYN  **Year:** 1989   **Reel:** 2488   **Page:** 60
BROOKLYN  **Year:** 1998   **Reel:** 4276   **Page:** 399
**CRFN:** 2006000423796
**Document ID:** 2017052500547003

Prepared by, and after recording
return to:

New York Community Bank
NYCB Plaza
102 Duffy Avenue, 3rd Floor
Hicksville, New York 11801
Attention: Loan Servicing
Loan No.:  110694184

---

### Consolidation, Modification and Extension Agreement, Assignment of Leases and Rents and Security Agreement

---

| | |
|---|---|
| Block: | 6108 |
| Lot: | 22 |
| County: | Kings |
| Premises: | 9201 4th Avenue |
| | Brooklyn, New York 11209 |

## CONSOLIDATION, MODIFICATION AND EXTENSION AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

THIS CONSOLIDATION, MODIFICATION AND EXTENSION AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT (herein "Agreement") is made as of the 22nd day of May, 2017, between SPL PARTNERS LLC, a limited liability company, organized and existing under the laws of Delaware, with a principal place of business at 540 Atlantic Avenue, Lower Level, Brooklyn, New York 11217 (herein "Borrower") and **NEW YORK COMMUNITY BANK**, a banking corporation organized and existing under the laws of the State of New York, with a place of business at NYCB Plaza, 102 Duffy Avenue, 5th Floor, Hicksville, New York 11801 (herein "Lender").

WHEREAS Borrower is indebted to Lender in the principal sum of SIXTEEN MILLION FOUR HUNDRED THOUSAND and 00/100 Dollars ($16,400,000.00) and Borrower and Lender desire to secure (a) the repayment of that indebtedness, with interest, and all renewals, extensions and modifications thereof, (b) the repayment of any future advances, with interest thereon made by Lender to Borrower, and (c) the performance of all of Borrower's obligations, covenants and agreements stated herein and consolidated herewith; and

WHEREAS Borrower has a fee interest in the real property located at 9201 4th Avenue, Brooklyn, New York 11209, in Kings County, State of New York, having the legal description set out in Exhibit A hereto (herein **"Property"**).

Borrower hereby covenants and agrees with Lender as follows:

## 1.    BORROWER'S ASSUMPTION OF OBLIGATIONS UNDER NOTES AND MORTGAGES.

Borrower assumes all of the obligations and agreements of the notes (herein, **"Notes"**) secured by the mortgages, deeds of trust or other security instruments (herein **"Mortgages"**) listed on Exhibit B attached hereto. Borrower also assumes all of the obligations in all agreements, whether or not listed in Exhibit B, which consolidate, modify or extend such Notes and Mortgages.

## 2.    AGREEMENT TO CONSOLIDATE AND MODIFY THE NOTES.

The Borrower agrees that the obligations under the Notes (and under all other agreements which consolidated, modified or extended the obligations under the Notes) shall be and are hereby consolidated. To that end, Borrower has concurrently herewith executed and delivered to Lender an Amended and Restated Mortgage Note (herein, **"Consolidated Note"**) which consolidates, amends and restates in their entirety the terms and provisions of the Notes.

{A325157;1}
Consolidation Modification & Extension Agreement
Loan No. 110694184_____    File No. 350.068
CD Form 146
04-09-11
Page 1

3.    **AGREEMENT TO CONSOLIDATE AND MODIFY THE MORTGAGES.**

Borrower agrees that the rights and obligations under the Mortgages (and under all other agreements which consolidated, modified or extended rights and obligations under the Mortgages) shall be and are hereby consolidated and that Lender's rights in the Property shall be and are hereby combined so that Lender has one real estate security interest (herein, **"Consolidated Mortgage"**) securing the Consolidated Note evidencing Borrower's indebtedness to Lender. Borrower and Lender agree that the terms of the Consolidated Mortgage are hereby amended and restated in their entirety to be the terms which are set out in Exhibit C hereto. As consolidated and restated hereby, the terms and provisions of the Mortgages shall remain in full force and effect and are hereby ratified and confirmed by Borrower in all respects. For purposes of the Consolidated Mortgage, Borrower's address stated above and Lender's address stated above shall be the addresses of Borrower and Lender, respectively, unless and until modified in accordance with the terms of the Consolidated Mortgage.

4.    **BORROWER'S WARRANTIES.**

Borrower covenants that Borrower is lawfully seized of a fee estate in the Property and has the right to consolidate, modify and extend the Notes and Mortgages (and, if this Agreement is on a leasehold, that the ground lease is in full force and effect without modification except as noted in Exhibit D, if any, attached hereto and without default on the part of either lessor or lessee thereunder) and that Borrower will defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property. Borrower also covenants and warrants that there are no offsets, counterclaims or defenses against the indebtedness now unpaid or against the Consolidated Note or the Consolidated Mortgage.

5.    **TERMINATION; CHANGE; AMENDMENTS.**

This Agreement may not be terminated, changed or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

6.    **LOST NOTE(S).**

In the event that any of the notes secured by mortgages set forth in Exhibit B (the **"Lost Notes"**), were lost or misplaced by the current owner or its predecessor in interest and have not been delivered to the Lender with the assignment of the mortgages hereinabove set forth, the Borrower hereby agrees that, notwithstanding the fact that the Lost Notes have not been delivered to the Lender, the Borrower remains indebted to the Lender in the full amount of $16,400,000.00 as set forth hereinabove and as set forth in and evidenced by the Consolidated Note executed by the Borrower of even date herewith, which amount includes the principal balance now remaining unpaid on the Lost Notes. The Borrower further agrees

and hereby waives any and all claims and/or rights in any way relating to or arising from the Lost Notes whether as a defense in any action brought by the Lender to enforce any of the terms of this Instrument or collect the full amount due and owing under this Instrument or the Consolidated Note or otherwise.   Borrower hereby indemnifies and holds the Lender harmless from and against any and all costs, liabilities, claims, damages, loss and expenses, including attorney's fees and expenses which at any time may be made, suffered or incurred by the Lender based upon the failure of the Lender to hold, obtain or deliver the Lost Notes.

**THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK.**

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement or caused the same to be executed by their representatives thereunto duly authorized.

**NEW YORK COMMUNITY BANK**

By: _____
       Peter L. Meyer
       First Senior Vice President

**SPL PARTNERS LLC,**
a Delaware limited liability company

By:    SPL Member LLC,
      a New York limited liability company,
      its Sole Member

By: _____
    James Pappas
    Chief Executive Officer and President

{A325157;1}
**Consolidation Modification & Extension Agreement**      CD Form 146      Page 4
**Loan No. 110694184_____ File No. 350.068**      04-09-11

STATE OF NEW YORK )
: ss.:
COUNTY OF NASSAU )

On the ___ day of May in the year 2017, before me, the undersigned, personally appeared Peter L. Meyer, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

On the 22nd day of May in the year 2017, before me, the undersigned, personally appeared James Pappas, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

**KARA A. LOBDELL**
**Notary Public-State of New York**
**No. 02LO6031220**
**Qualified in New York County**
**Commission Expires September 27, 2017**

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement or caused the same to be executed by their representatives thereunto duly authorized.

NEW YORK COMMUNITY BANK

By: _____
Peter L. Meyer
First Senior Vice President


**SPL PARTNERS LLC,**
a Delaware limited liability company

By:     SPL Member LLC,
a New York limited liability company,
its Sole Member


By:     _____
James Pappas
Chief Executive Officer and President

STATE OF NEW YORK       )

                            : ss.:

COUNTY OF NASSAU    )

On the 19th day of May in the year 2017, before me, the undersigned, personally appeared Peter L. Meyer, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

MARY ARIOLA
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01AR6048324
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES 9/25/20 18

STATE OF NEW YORK       )

                           : ss.:

COUNTY OF NEW YORK  )

On the 22nd day of May in the year 2017, before me, the undersigned, personally appeared James Pappas, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

{A325157;1}
Consolidation Modification & Extension Agreement     CD Form 146           Page 5
Loan No. 110694184 _____ File No. 350.068     04-09-11

## EXHIBIT "A"
### (Metes)

**ALL** that certain plot, piece or parcel of land, situate, lying and being in the City of Brooklyn, County of Kings, State of New York, bounded and described as follows:

**BEGINNING** at the corner formed by the intersection of the southerly side of East 92nd Street with the westerly side of 5th Avenue;

**RUNNING THENCE** southerly along said westerly side of 5th Avenue 101 feet 2 inches;

**THENCE** westerly and parallel with 92nd Street 163 feet 5½ inches to the easterly side of 4th Avenue;

**THENCE** northerly along said easterly side of 4th Avenue 105 feet 2¼ inches to the southerly side of 92nd Street; and

**THENCE** easterly along said southerly side of 92nd Street 192 feet 3¼ inches to the corner of the point or place of **BEGINNING**.

## EXHIBIT "B"
### (Mortgages)

1. Building Loan Mortgage made by S.P.L. Associates to The Greater New York Savings Bank in the principal sum of $9,835,000.00 dated September 14, 1988 and recorded on September 26, 1988 in the Office of the New York City Register, Kings County (the "Register's Office") as Reel 2280, Page 865. (Mortgage Tax Paid: $221,287.50)

   Which said Mortgage 1 was modified by a Mortgage Modification Agreement dated as of December 4, 1989 made by and between S.P.L. Associates and The Greater New York Savings Bank and recorded on January 25, 1990 in said Register's Office as Reel 2506, Page 1943.

2. Project Loan Mortgage made by S.P.L. Associates to The Greater New York Savings Bank in the principal sum of $165,000.00 dated September 14, 1988 and recorded on September 26, 1988 in said Register's Office as Reel 2280, Page 887. (Mortgage Tax Paid: $3,712.50)

   Which said Mortgage 2 was modified by a Mortgage Modification Agreement dated as of December 4, 1989 made by and between S.P.L. Associates and The Greater New York Savings Bank and recorded on January 25, 1990 in said Register's Office as Reel 2506, Page 1937.

3. Building Loan Mortgage and Security Agreement made by S.P.L. Associates to The Greater New York Savings Bank in the principal sum of $675,000.00 dated December 4, 1989 and recorded on December 13, 1989 in said Register's Office as Reel 2488, Page 60. (Mortgage Tax Paid: $15,187.50)

   Which said Mortgages 1, 2 and 3 were consolidated by a Mortgage Modification, Extension, Consolidation and Security Agreement made by and between S.P.L. Associates and The Greater New York Savings Bank dated September 24, 1990 and recorded on October 10, 1990 in said Register's Office as Reel 2620, Page 2206 to form a single lien in the principal sum of $10,675,000.00.

   Which said Mortgages 1, 2 and 3, as consolidated, were modified by a Note and Mortgage Modification Agreement made by and between SPL Associates (a/k/a S.P.L. Associates) and The Greater New York Savings Bank dated as of April 18, 1994 and recorded on May 16, 1994 in said Register's Office as Reel 3289, Page 1227.

   Which said Mortgages 1, 2 and 3, as consolidated, were assigned by an Assignment of Mortgage from Astoria Federal Savings and Loan Association, successor by merger to The Greater New York Savings Bank, to Amresco Financial I, L.P. dated May 27, 1998 and recorded on September 11, 1998 in said Register's Office as Reel 4276, Page 414.

Which said Mortgages 1, 2 and 3, as consolidated, were further assigned by an Assignment of Mortgage Agreement from Amresco Financial I, L.P, to First Union National Bank dated June 25, 1998 and recorded on September 11, 1998 in said Register's Office as Reel 4276, Page 409.

4.  Mortgage and Security Agreement made by SPL Associates to First Union National Bank in the principal sum of $1,310,340.46 dated as of June 29, 1998 and recorded on September 11, 1998 in said Register's Office as Reel 4276, Page 399. (Mortgage Tax Paid: $36,033.25)

Which said Mortgages 1, 2, 3 and 4 were consolidated by an Agreement of Spreader, Consolidation, Amendment and Restatement of Mortgage made by and between SPL Associates and First Union National Bank dated as of June 29, 1998 and recorded on September 11, 1998 in said Register's Office as Reel 4276, Page 419 to form a single lien in the principal sum of $10,900,000.00.

Which said Mortgages 1, 2, 3 and 4, as consolidated, were assigned by an Assignment of Mortgage from First Union National Bank to Norwest Bank Minnesota, N.A., as Trustee for the registered holders of First Union Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, FUNB Series 1999-Cl, effective December 30, 1998 and recorded on November 14, 2000 in said Register's Office as Reel 5007, Page 2133.

Which said Mortgages 1, 2, 3 and 4, as consolidated, were assigned by an Assignment of Mortgage from Wells Fargo Bank, N.A. (f/k/a Norwest Bank Minnesota, N.A.), as Trustee for the registered holders of First Union Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, FUNB Series 1999-C1, to Wachovia Bank, National Association dated as of June 15, 2006 and recorded on July 26, 2006 in said Register's Office as CRFN 2006000423793.

5.  Mortgage made by SPL Partners LLC to Wachovia Bank, National Association in the principal sum of $5,688,955.00 dated June 15,2006 and recorded on July 26, 2006 in said Register's Office as CRFN 2006000423796. (Mortgage tax paid: $159,292.00)

Which said Mortgages 1, 2, 3, 4 and 5 were consolidated by an Amended, Restated and Consolidated Mortgage, Security Agreement and Fixture Filing made by and between SPL Partners LLC to Wachovia Bank, National Association dated as of June 15, 2006 and recorded on July 26, 2006 in said Register's Office as CRFN 2006000423797 to form a single lien in the principal sum of $15,000,000.00.

Which said Mortgages 1, 2, 3, 4 and 5, as consolidated, were assigned by an Assignment of Mortgage from Wachovia Bank, National Association to Wells Fargo Bank, N.A., as Trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C27, dated as of November 21, 2006 and recorded on June 28, 2007 in the Register's Office as CRFN 2007000334104.

Which said Mortgages 1, 2, 3, 4 and 5, as consolidated, were assigned by an Assignment of Mortgage from Wells Fargo Bank, N.A., as Trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass Through Certificates, Series 2006-C27, to Bank of America, N.A., as Trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C27, dated as of March 31, 2009 and recorded on August 31, 2009 in said Register's Office as CRFN 2009000279926.

Which said Mortgages 1, 2, 3, 4 and 5, as consolidated, were assigned by an Assignment of Mortgage from Bank of America, N.A., a National Banking Association, as Trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C27, to U.S. Bank National Association, a National Banking Association organized and existing under the laws of the United States of America, not in its individual capacity but solely in its capacity as Trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C27, dated as of October 17, 2016 and recorded on December 6, 2016 in said Register's Office as CRFN 2016000429914.

Which said Mortgages 1, 2, 3, 4 and 5, as consolidated, were assigned by an Assignment of Mortgage from U.S. Bank National Association, a National Banking Association organized and existing under the laws of the United States of America, not in its individual capacity but solely in its capacity as Trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C27 to New York Community Bank dated on or about the date hereof and intended to be recorded simultaneously herewith in said Register's Office.

6. Mortgage made by SPL Partners LLC to New York Community Bank in the principal sum of $3,713,658.60 dated May 22, 2017 and intended to be recorded simultaneously herewith in said Register's Office.

.5{A325157;1}
**Consolidation Modification & Extension Agreement**
Loan No. 110694184_ File No. 350.068

CD Form 146
04-09-11

EXH-B Page 3

EXHIBIT "C"

MORTGAGE,
ASSIGNMENT OF LEASES AND RENTS
AND SECURITY AGREEMENT

Mortgage, Assignment of Leases and Rents and Security Agreement dated the 22nd day of May, 2017 ("**Mortgage**") given by **SPL PARTNERS LLC**, a Delaware limited liability company, with a principal place of business at 540 Atlantic Avenue, Lower Level, Brooklyn, New York 11217 ("**Borrower**" or "**Mortgagor**"), to **NEW YORK COMMUNITY BANK**, a banking corporation organized and existing under the laws of the State of New York, with a place of business at NYCB Plaza, 102 Duffy Avenue, 5th Floor, Hicksville, New York 11801 ("**Lender**" or "**Mortgagee**").

**Preliminary Statements.** Reference is made to the loan of even date herewith in the sum of SIXTEEN MILLION FOUR HUNDRED THOUSAND and 00/100 DOLLARS (US $16,400,000.00), lawful money of the United States made by Lender to Borrower ("**Loan**"), to be paid with interest thereon, evidenced by the $16,400,000.00 Amended and Restated Mortgage Note dated May 22, 2017 made by Borrower and payable to Lender (as the same may be amended, renewed or restated, the "**Note**")."

**Article 1 - Grant**

**Section 1.1    Property.**

Borrower hereby irrevocably mortgages, grants, bargains, sells, pledges, sets over, assigns, warrants, transfers and conveys to Lender, and grants a security interest to Lender in, all of the following property, rights, interests and estates now owned or hereafter created, acquired by Borrower or accruing in Borrower's favor (collectively, the "**Property**" or the "**Mortgaged Property**"):

(1)    Land. All of the estate, right, title and interest of Borrower in and to that certain parcel of real property described in Schedule A annexed hereto and made a part of this Mortgage ("**Land**"),

(2)    Improvements. All structures, buildings and improvements, including additions, enlargements, extensions, utility services and hook-ups, modifications, repairs, and replacements, of every kind and description now or any time hereafter located or placed on the Land ("**Improvements**"),

(3)    Fixtures. All fixtures now or hereafter attached to the Land or Improvements, including all plumbing, heating, air conditioning, lighting, ventilating, refrigerating, disposal and incinerating equipment and all other engines, boilers, dynamos, elevators and tanks ("**Fixtures**"),

(4)    <u>Other Property Rights</u>.  All other rights and interests on, under, above or related to the Land and/or Improvements and/or Fixtures, including all appurtenances, easements, rights of way or uses, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights and all water, ditch, well, reservoir and drainage rights, mineral rights, air rights and development rights, and all land lying in the bed of any street, road or avenue, in front of or adjoining the Land to the center thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto and all minerals, crops, timber, trees, shrubs, flowers and landscaping features now or hereafter located on, under or above the Land ("**Other Property Rights**"),

(5)    <u>Real Property Rights</u>.  All real property rights, whether at law or in equity, in possession or in expectancy, including all estates, rights, titles, interests, franchises, privileges, licenses, liberties, servitudes, tenements, herediments and appurtenances, reversions and remainders, rents, issues, profits and revenue in any way belonging, relating or appertaining to any interests mortgaged hereby including the Land, Improvements, Personal Property, Fixtures and/or Other Property Rights or any part thereof ("**Real Property Rights**"),

(6)    <u>Personal Property</u>.  All personalty including, all furniture, furnishings, goods, equipment, inventory or personal property now or at any time located on, attached to or used in and about the Improvements or in connection with operation of the Improvements, or in connection with activity conducted at the Real Estate, including all machines, engines, boilers, furnaces, fuel oil, coal, motors, dynamos, elevators, tanks, cabinets, awnings, screens, shades, blinds, carpets, draperies and all appliances, plumbing, gas, electric, electric light, heating, air conditioning, lighting, ventilating, refrigerating, disposal, incinerating equipment, vacuum cleaning systems, sprinkler systems and other fire preventing or extinguishing equipment and materials, stoves, ranges, refrigerators, washing machines, clothes dryers, dishwashers, refuse compactors, saunas and all building materials and equipment hereafter situated on or about the Real Estate and all warranties and guaranties relating thereto, and all additions thereto and substitutions and replacements thereof ("**Personal Property**"),

(7)    <u>Permits and Approvals</u>.  All permits and approvals including all water taps, sewer taps, certificates of occupancy, certificates of completion, permits, Governmental Approvals, licenses, authorizations, variances, franchises, certificates, consents, approvals and other permits, rights and privileges now or hereafter obtained in connection with the Real Estate or the Improvements ("**Permits**"),

(8)    <u>Leases and Rents</u>.  All leases and rents including oil, gas and mineral leases, subleases, occupancies, tenancies, lettings, concessions, licenses and occupancy agreements and all agreements of every kind relating to the use, enjoyment or occupancy of all or any part of the Real Estate, whether written or oral, now or hereafter entered into whether before or after the filing by or against Borrower of any petition for relief under the United States

{A325157;1}
**Consolidation Modification & Extension Agreement**
**Loan # - 110694184** _ **File No. 350.068**

CD Form 146
04-09-11

EXH-C Page 2

Bankruptcy Code, 11 USC sec. 101, et seq., with any tenant, subtenant, lessee, licensee, occupant or other party ("**Tenants**"), all as amended or modified from time to time (the "**Leases**") and all rents, royalties, issues, deposits, profits, revenue, income and other benefits of the assets specified in this definition of "Property", including all amounts payable and all rights and benefits accruing to Borrower under the Leases or under any other contract or agreement including housing assistance payment contracts and all such similar contracts ("**HAP Contract**") issued by or entered into by any Person including a Governmental Authority (all of the foregoing, collectively, the "**Rents**") and all guarantees of, letters of credit covering, and cash or securities deposited to secure performance by the Tenants of their obligations under any Lease, whether said guaranties, letters of credit, cash or securities are to be held until the expiration of the term of the applicable Lease or applied to one or more of the installments of Rent coming due prior to the expiration of said term ("**Tenant Security**"),

(9) <u>Reserves</u>. All cash funds, deposit accounts and other rights and evidence of rights to cash, now or hereafter created or held by Lender pursuant to this Mortgage or any other Loan Document ("**Reserves**"),

(10) <u>Property Agreements</u>. All contracts and agreements entered into covering or related to the use, operation, maintenance, repair, restoration or management of any or all of the Real Estate and all revenue, income and other benefits thereof, including all track agreements, easement agreements, access agreements, developer's or utility agreements, management agreements, service contracts, maintenance contracts, equipment leases, personal property leases and contracts or documents relating to construction on any part of the Real Estate (including plans, drawings, surveys, tests, reports, bonds, Governmental Approvals, architectural renderings, models, specifications, studies and data now or hereafter relating to the Real Estate) ("**Property Agreements**"),

(11) <u>Utility Deposits</u>. All deposits given to any public or private utility with respect to utility services furnished to all or any part of the Real Estate,

(12) <u>General Intangibles</u>. All funds, accounts, instruments, accounts receivable, documents, causes of action, claims, general intangibles including trademarks, trade names, service marks and symbols now or hereafter used in connection with any part of the Real Estate, all names by which the Real Estate may be operated or known, all rights to carry on business under such names and all rights, interest and privileges which Borrower has or may have as developer or declarant under any covenants, restrictions or declarations now or hereafter arising from or by virtue of any transactions related to the Real Estate,

(13) <u>Building Materials and Plans</u>. All building materials, supplies and equipment placed in, on or used in conjunction with the Real Estate,

(14) <u>Insurance</u>. All right, title and interest of Borrower in any insurance policies or binders now or hereafter relating to the Property (including title insurance policies and

policies of Required Insurance), including any unearned premiums thereon and Borrower's interest in and to all proceeds of any such insurance policies including the right to collect and receive such proceeds,

(15)    <u>Condemnation</u>.  All right, title and interest of Borrower in and to any and all awards, damages, payment or other compensation, and any and all claims therefor and rights thereto, which may result from taking or injury by virtue of the exercise of the power of condemnation or eminent domain to all or any portion of the Property,

(16)    <u>Books and Records</u>.  All Books and Records relating to or used in connection with the "Property" including those specified in Article 10,

(17)    <u>Bonds</u>.  All right, title and interest of Borrower under completion bonds, performance bonds, payment bonds and other similar bonds and surety agreements and arrangements related to the Property or any party thereof,

(18)    <u>Tax Certiorari</u>.  All refunds, rebates or credits in connection with reduction in Real Property Taxes charged or assessed against the Property including those as a result of tax certiorari proceedings, tax protests, tax reduction applications and similar proceedings,

(19)    <u>Causes of Action</u>.  All causes of action and claims, including all causes of action or claims arising in tort, by contract, by fraud or by concealment of material fact, against any Person for damages or injury to the Property including those in connection with any transactions financed in whole or in part with proceeds of the Note ("**Cause of Action**") and the right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property,

(20)    <u>Additions and Proceeds</u>.  All additions, accessions, replacements, substitutions, proceeds and products of the Property, and

(21)    <u>Other Rights</u>.  All other greater, lesser or equal rights and interests of every nature in the Property or in the possession or use of the Property including any income therefrom.

## Section 1.2    Mortgage and Fixture Filing.

Borrower and Lender agree that (1) this Mortgage is both a real property mortgage and a "security agreement" within the meaning of the applicable Uniform Commercial Code, and (2) this Mortgage constitutes a "fixture filing" for purposes of the applicable Uniform Commercial Code.

## Section 1.3    Secured Obligations.

This Mortgage and the grants, assignments and transfers made in respect of the Property secure the payment of all amounts due and owing or to come due under any of the Loan Documents ("**Secured Obligations**") including: (1) the Indebtedness, (2) all interest, including default interest, all fees, including all exit fees, all charges and other payment obligations under this Mortgage and the other Loan Documents, including yield maintenance payments and prepayment premiums, (3) payment and performance of all obligations of Borrower under this Mortgage and each of the other Loan Documents, (4) all sums advanced pursuant to this Mortgage or any other Loan Document, including those advanced to protect and preserve the Property and the Lien created by this Mortgage and (5) all fees, costs, charges and expenses incurred by Lender that Borrower is required to pay to Lender in accordance with the terms of this Mortgage or any other Loan Document including those specified in Section 15.3(H).

## Article 2 - Definitions

## Section 2.1    Definitions.

For purposes of this Mortgage the following terms have the following meanings:

"**Affiliate**" means, with respect to any Person, any other Person which directly or indirectly controls, or is controlled by, shares control with or is under common control with such Person. The term "control" means the possession, directly or indirectly, of the power to cause or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"**Affiliated Manager**" has the meaning specified in "Event of Default Definitions" (Section 12.1).

"**Assignment of Leases and Rents**" has the meaning specified in "Assignment of Leases and Rents" (Section 5.4).

"**Bankruptcy Event**" means any one or more of the following: (i) the commencement of a voluntary case under one or more of the Insolvency Laws; (ii) a Person is not able to or admits in writing that it is unable to pay such Person's debts generally as they mature; (iii) the making of a general assignment for the benefit of creditors; (iv) a Person becomes insolvent; (v) an involuntary case under one or more Insolvency Laws; (vi) the petition or application for the appointment of, or the appointment of a receiver, liquidator, custodian, sequestrator, trustee or other similar officer who exercises or attempts to exercise control over a Person or any of the assets of a Person provided that any proceeding or case under subsection (v) or (vi), immediately above, is not dismissed within 45 days after filing.

"**Books and Records**" has the meaning specified in "Books and Records" Section 1.1(16)).

{A325157;1}
**Consolidation Modification & Extension Agreement**
**Loan # - 110694184          _ File No. 350.068**

CD Form 146
04-09-11

EXH-C Page 5

"**Borrower**" means the Borrower described on page 1 of this Mortgage.

"**Business Interruption Insurance Deductible**" means an amount not to exceed $20,000.00.

"**Casualty**" means any casualty, damage, injury, destruction or loss occurring to all or any part of the Property.

"**Casualty Insurance Deductible**" means $20,000.00.

"**Casualty Insurance Proceeds**" means all insurance proceeds which Borrower is entitled to receive or which are payable or due or to come due under any insurance policy as a result of a Casualty, pursuant to the Required Insurance.

"**Condemnation**" has the meaning specified as "Condemnation Definitions" (Section 7.1).

"**Default**" means any of the events specified in "Events of Default" (Section 12.2), whether or not any requirement for the giving of notice, the lapse of time, or both, or any other condition, has been satisfied.

"**DSCR**" means Debt Service Coverage Ratio which is the ratio as determined by the Lender of Net Operating Income to the annual principal and interest payable on the Loan.

"**Environmental Laws**" has the meaning specified in "Environmental Definitions" (Section 8.1).

"**Escrow Fund**" has the meaning specified in "Escrow Fund" (Section 4.7).

"**Event of Default**" has the meaning specified in "Events of Default" (Section 12.2).

"**Fixtures**" has the meaning specified in "Fixtures" (Section 1.1(3)).

"**Governmental Approvals**" means any authorization, consent, or approval of and Governmental Authority including any license, permit, or certification issued by, or any exemption of, registration or filing with, or report or notice to, any Governmental Authority.

"**Governmental Authority**" means any nation or national government including the federal government of the United States of America, any state or state government, any municipality or municipal government, any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government and any other subdivision, council, department, branch or agency of any of the foregoing.

{A325157;1}
**Consolidation Modification & Extension Agreement**
**Loan # - 110694184        _ File No. 350.068**

CD Form 146
04-09-11

EXH-C Page 6

"**Guarantor**" means James Pappas, Robert J. Silvestri, Robert J. Silvestri as successor trustee of The Luigi G. Silvestri Revocable Trust dated October 8, 2008, Dimitrios Spiropoulos, and each other Person that guarantees payment or performance of all or any part of the Secured Obligations.

"**Guaranty**" means each guaranty executed by a Guarantor.

"**Hazardous Materials**" has the meaning specified in "Environmental Definitions" (Section 8.1).

"**Improvements**" has the meaning specified in "Improvements" (Section 1.1(2)).

"**Indemnified Parties**" has the meaning specified in "Environmental Definitions" (Section 8.1).

"**Indemnitor**" means SPL Partners LLC, James Pappas, Robert J. Silvestri, Robert J. Silvestri as successor trustee of The Luigi G. Silvestri Revocable Trust dated October 8, 2008, Dimitrios Spiropoulos, and each other Person that indemnifies Lender in connection with the Loan, the Property or any matter concerning and/or relating to the Loan including any of the Secured Obligations.

"**Indemnity Agreement**" means each agreement executed by an Indemnitor pursuant to which such Indemnitor provides an indemnity, whether environmental or otherwise.

"**Insolvency Laws**" means the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, together with any other federal or state law affecting debtor and creditor rights or relating to the bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, liquidation or similar proceeding or any proceeding (civil or criminal) under which assets are subject to levy, attachment, sequestration, seizure, forfeiture or divestiture.

"**Investors**" has the meaning specified in "Dissemination of Information" (Section 14.3).

"**Land**" has the meaning specified in "Land" (Section 1.1(1)).

"**Laws**" means any present or future domestic or foreign, national, federal, state, provincial, local or municipal statute, law, rule, regulation, ordinance, order, code, decree, policy, requirement or rule of common law, now or hereafter in effect, in each case as amended, and any judicial or administrative interpretation thereof by a Governmental Authority or otherwise, including any judicial or administrative order, decree (including a consent decree or consent order), judgment or agreement with any Governmental Authority, and all permits, licenses, approvals and authorizations issued by any Governmental Authority, and including parking, zoning, building, subdivision and land use Laws.

"**Leases**" has the meaning specified in "Leases and Rents" (Section 1.1(8)).

"**Lender**" means New York Community Bank, the Lender described on page 1 of this Mortgage.

"**Lender's Title Policy**" has the meaning set forth in Section 3.1(4).

"**License to Collect Rents**" has the meaning specified in "Assignment of Leases and Rents" (Section 5.4).

"**Lien**" means any mortgage, deed of trust, pledge, security interest, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or otherwise) or preference, priority, or other security agreement or preferential arrangement, charge, or encumbrance of any kind or nature whatsoever, including any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing and the filing of any financing statement under the Uniform Commercial Code or comparable Law of any jurisdiction to evidence any of the foregoing.

"**Loan Documents**" means the Note, this Mortgage and each other document and agreement executed or delivered in connection with the Loan, the Note or this Mortgage.

"**Losses**" has the meaning specified in "Environmental Definitions" (Section 8.1).

"**LTV**" means Loan to Value ratio, as determined by the Lender, of the then current unpaid principal balance of the Loan to the lesser of (i) the purchase price of the Real Estate (if purchased in the past twelve months) or (ii) the value of the Real Estate as established by a current appraisal acceptable to the Lender.

"**Mortgage**" means this Mortgage, Assignment of Leases and Rents and Security Agreement.

"**Mortgage Amount**" means $16,400,000.00.

"**Net Operating Income**" shall mean the actual income generated by the Premises based upon a then current rent roll (annualized) of the Real Estate less the greater of (i) the actual expenses of the Real Estate or (ii) the expenses set forth in a then current appraisal of the Real Estate acceptable to the Lender.

"**Note**" has the meaning specified in the Preliminary Statements.

"**Obligated Party**" has the meaning specified in "Event of Default Definitions" (Section 12.1).

"**Other Property Rights**" has the meaning specified in "Other Property Rights" (Section 1.1(4)).

{A325157;1}
**Consolidation Modification & Extension Agreement**
**Loan # - 110694184        _ File No. 350.068**

CD Form 146
04-09-11

EXH-C Page 8

"**Organizational Documents**" has the meaning specified in "Single Purpose Entity Definitions" (Section 9.1).

"**Participations**" has the meaning specified in "Transfer of Loan" (Section 14.1).

"**Permits**" has the meaning specified in "Permits and Approvals" (Section 1.1(7)).

"**Permitted Liens**" means (1), as of the date hereof, Liens for Real Property Taxes not yet due and payable, (2), subsequent to the date hereof, Liens for Real Property Taxes as to which Lender has sufficient funds in the Escrow Fund to pay and discharge and (3) exceptions shown in the title insurance policy insuring the Lien of this Mortgage.

"**Person**" means an individual, partnership (including a limited liability partnership), corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, tenancy-in-common arrangement, Governmental Authority or other entity of whatever nature.

"**Personal Property**" has the meaning specified in "Personal Property" (Section 1.1(6)).

"**Power of Sale**" means any Law which permits the holder of this Mortgage to foreclose this Mortgage by power of sale and/or to sell any portion of the Property through either judicial or non-judicial means or at a judicial or non-judicial sale. If the Property is located in the State of New York, the meaning of such term shall also include the power to sell pursuant Article 14 of the Real Property Actions and Proceeding Law of New York and similar Laws.

"**Principal of the Borrower**" means (i) any member, shareholder or partner of the Borrower, (ii) any other owner of an equity interest in Borrower, (iii) any member, shareholder, partner or equity owner of any entity which either directly or indirectly through any other entity(ies) has an equity interest in Borrower and/or (iv) any member, shareholder, partner or equity owner of any such other entity(ies).

"**Prohibited Transfer**" has the meaning specified in "Event of Default Definitions" (Section 12.1).

"**Property**" has the meaning specified in "Property" (Section 1.1).

"**Property Agreements**" has the meaning specified in "Property Agreements" (Section 1.1(10)).

"**Real Estate**" means the Land, the Improvements, the Fixtures, the Other Property Rights and the Real Property Rights.

"**Real Property Rights**" has the meaning specified in "Real Property Rights" (Section 1.1(5)).

"**Real Property Taxes**" has the meaning specified in "Escrow Fund" (Section 4.7).

"**Release**" has the meaning specified in "Environmental Definitions" (Section 8.1).

"**Remedial Work**" has the meaning specified in "Environmental Definitions" (Section 8.1).

"**Rents**" has the meaning specified in "Leases and Rents" (Section 1.1(8)).

"**Replacement**" has the meaning specified in "Application of Condemnation Proceeds" (Section 7.5).

"**Required Insurance**" has the meaning specified in "Maintenance of Insurance" (Section 6.3).

"**Reserves**" has the meaning specified in "Reserves" (Section 1.1(9)).

"**Restoration**" has the meaning specified in "Application of Insurance Proceeds" (Section 6.12).

"**Restricted Parties**" has the meaning specified in "Event of Default Definitions" (Section 12.1).

"**Restrictive Covenants**" has the meaning specified in "Compliance with Laws, Permits and Restrictive Covenants" (Section 4.1(4)).

"**Sale or Encumbrance**" means a voluntary or involuntary transfer or conveyance of a legal or beneficial right, title or interest, whether by sale, lease, assignment, grant of options, right of first refusal, gift, donation, operation of law, or otherwise, or the granting, creation, incurrence, assumption or existence of a Lien or the entering into any agreement to do any of the foregoing.

"**Secured Obligations**" has the meaning specified in "Secured Obligations" (Section 1.3).

"**Securities**" has the meaning specified in "Transfer of Loan" (Section 14.1).

"**Tenant**" has the meaning specified in "Leases and Rents" (Section 1.1(8)).

"**Tenant Security**" has the meaning specified in "Leases and Rents" (Section 1.1(8)).

"**UCC Collateral**" has the meaning specified in "Remedies Under the UCC" (Section 13.1(10)).

"**Umbrella Liability Coverage Amount**" means umbrella liability insurance in a coverage amount of at least $5,000,000.00 per occurrence.

## Section 2.2    Rules of Interpretation.

When used in this Mortgage: (1) "or" is not exclusive, (2) any pronouns used shall include the corresponding masculine, feminine and neuter form, (3) a reference to a Law includes any amendment or modification of such Law, (4) terms defined in the singular have the same meaning when used in the plural and vice versa, (5) a reference to an agreement, instrument or document includes any amendment or modification of such agreement, instrument or document, to the extent and provided that such amendment or modification is in accordance with the terms of such agreement, instrument or document and is permitted under the Loan Documents and (6) the word "including" means "including, but not limited to,". Capitalized terms have the meanings specified in "Definitions" (Article 2) or as elsewhere defined herein or in the Loan Documents. Terms which are defined in the Note and which are used herein shall have the meanings ascribed to them in the Note. The term "Borrower" shall also mean "Mortgagor" and the term "Lender" shall also mean "Mortgagee".

## Article 3 - Mortgage Lien and Security Interest

## Section 3.1    Representations and Warranties.

Borrower represents and warrants to Lender as follows:

(1)    *Name of Borrower*.  The exact legal name of Borrower is the name specified on page 1 of this Mortgage.  Borrower has not been known by any other name during the ten (10) years prior to the date of this Mortgage.

(2)    *Jurisdiction of Formation of Borrower*.  Borrower is formed under the laws of the State of Delaware and is qualified to do business in the State of New York.

(3)    *Location for Filing of Financing Statement*.  With respect to any item of Property that is personal property in which a security interest can be perfected by the filing of a UCC financing statement, the filing of such a statement with the Secretary of State of Delaware and the Register's Office of the City of New York, Kings County, will perfect the security interest of Lender in such Property.

(4)    *No Restrictions on Property*.  Other than as expressly set forth in the mortgagee title policy delivered to and insuring the Lender in connection with the origination of the Loan **"Lender's Title Policy"**), none of the Property is subject to a restriction that prohibits, restricts or limits (a) the grant of a Lien in such Property, (b) the perfection of the Lien granted by this Mortgage (including the priority of such Lien), or (c) the exercise by Lender of its rights, remedies and powers under this Mortgage or otherwise.

(5)    *Lien and Claims*.  This Mortgage creates a valid Lien in the Property and such Lien secures the payment and performance of all Secured Obligations.  The Lien of this

Mortgage on the Property is a first priority Lien. Borrower owns the Property free and clear of all Liens, including mechanic's or similar Liens, except for Permitted Liens.

**Section 3.2     Filing of Financing Statement.**

Borrower hereby authorizes Lender or its designee at any time and from time to time, to file financing statements and amendments covering the Property in such jurisdictions as Lender may deem necessary or desirable to perfect the Lien granted by Borrower under this Mortgage.

**Section 3.3     Actions to Perfect Security Interest.**

Borrower agrees that from time to time, it will promptly execute and deliver all instruments and documents, and take all actions, that may be necessary, or that Lender may request or deem desirable, for the attachment, perfection and maintenance of the priority, of the Lien of this Mortgage on any and all of the Property or to enable Lender to exercise and enforce any and all of its rights, powers and remedies under this Mortgage or otherwise with respect to any and all of the Property.

**Section 3.4     Change of Name, Etc.**

Borrower agrees not to change its name or jurisdiction of formation. Borrower agrees not to change its principal place of business without giving Lender at least thirty (30) days' prior notice.

**Section 3.5     Reporting Requirements.**

Borrower will immediately notify Lender if (1) any claim, including any attachment, levy, execution or other legal process, is made against any or all of the Property, or (2) any representation and warranty included in this Mortgage would no longer be true if made on such date. Borrower will furnish to Lender from time to time statements and schedules further identifying and describing the Property and such other reports in connection with such Property as Lender may request, all in detail as required by Lender.

**Article 4 - Property**

**Section 4.1     Representations and Warranties.**

Borrower represents and warrants that:

(1)     <u>Title</u>. Borrower has good, valid, subsisting, insurable and marketable title to the Real Estate in fee simple and good and marketable title to the rest of the Property, in each case free and clear of all Liens other than Permitted Liens. The Permitted Liens do not (a) interfere with the use or operation of all or any portion of the Property or (b) adversely affect the value of any or all of the Property. All Real Property Taxes due and owing as of the date of this Mortgage have been paid as of the date when due.

(2)    <u>No Agreements to Transfer the Property</u>.  Other than as expressly set forth in Lender's Title Policy, none of the Property is subject to any agreement which provides for the conveyance of any right, title or interest in such Property, whether through a Sale or Encumbrance, other than the Leases and, with respect to Leases, same contain no option(s) to purchase all or any portion of the Property and contain only those rights which (a) are usually and routinely found in favor of tenants and (b) were made in Borrower's ordinary course of business.

(3)    <u>Condition of the Property</u>.  The Improvements and Fixtures are structurally sound, in good repair and free of patent or latent defects in materials and workmanship, and all major building systems located within the Improvements, including the heating, air conditioning, electrical and plumbing systems, are in good working order and condition.  The Personal Property is in good repair and free of patent or latent defects in materials and workmanship.  The Property is free from damage caused by a Casualty.

(4)    <u>Compliance with Laws, Permits and Restrictive Covenants</u>.  Each item of Property is in compliance with all applicable Laws. Borrower possesses and is in compliance with all Permits required for the ownership and operation of the Property.  The Property is in compliance with each condition, easement, right-of-way, covenant or restriction affecting the Property ("**Restrictive Covenants**").  If there is a Casualty, the damaged Improvements can legally be reconstructed to their condition prior to such Casualty without violating any Law and without the necessity of obtaining any variances or special permits.  The use of the Property is in conformity with the certificate of occupancy presently issued for the Property. Neither the zoning nor any other right to construct, use or operate the Property is in any way dependent upon or related to any other property.

(5)    <u>Encroachment</u>.  Other than as expressly set forth in Lender's Title Policy, none of the Improvements lies outside of the boundaries or building restriction lines of the Land or Improvements and no buildings or other improvements located on adjoining properties encroach upon or encumber the Property.  There are no easements or other encumbrances upon the Property which encroach upon any of the Improvements so as to affect the value or marketability of the Property.

(6)    <u>Litigation</u>.  There is no action, suit or proceeding pending or, to the knowledge of Borrower, threatened against or affecting the Property or the zoning of the Property.

(7)    <u>Property Agreements</u>.  Borrower has entered into each Property Agreement required for the ownership, operation and maintenance of the Property.  Borrower represents that (a) each Property Agreement is in full force and effect, (b) no party to any such Property Agreement has failed to perform any material obligation under any such Property Agreement, and (c) there are no outstanding defaults under any such Property Agreement. Borrower represents that (a) no offset or any right of offset exists with respect to continued contributions to be made by any party to any Property Agreement, (b) no exclusions or

{A325157;1}
**Consolidation Modification & Extension Agreement**
**Loan # - 110694184          _ File No. 350.068**

CD Form 146
04-09-11

EXH-C Page 13