Melissa A. Peña, Esq.
NORRIS McLAUGHLIN, P.A.
7 Times Square – 21st Floor
New York, New York 10036
(212) 808-0700
*Proposed Counsel for the Debtor, SPL Partners LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SPL Partners LLC,<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 21-42248 (ESS) |

**DECLARATION OF DEMETRIOS SPIROPOULOS IN SUPPORT OF THE LIMITED OBJECTION BY THE DEBTOR TO THE MOTION BY SIGNATURE LIEN ACQUISITIONS III LLC TO (i) EXCUSE THE RECEIVER'S COMPLIANCE WITH THE TURNOVER PROVISIONS OF THE BANKRUPTCY CODE OR, ALTERNATIVELY, APPOINT AN OPERATING TRUSTEE; AND (ii) TO APPROVE PROTECTIVE ADVANCES AND USE OF CASH COLLATERAL TO MAINTAIN THE PROPERTY**

**DEMETRIOS SPIROPOULOS,** declares under the penalty of perjury, as follows:

1.  I am the managing member of SPL Members, LLC, the sole owner of the debtor, SPL Partners LLC (the "Debtor"). As such, I have knowledge of the facts set forth herein based on my personal knowledge and/or my review of the Debtor's books and records, which are maintained in the ordinary course of its business.

2.  I submit this Declaration in support of the Debtor's Limited Objection to the motion by Signature Lien Acquisitions III LLC ("Signature" or "Lender"), for an Order (i) to excuse Gregory LaSpina, the state court receiver, from complying with the turnover provisions of the Bankruptcy Code or, alternatively, to appoint an operating trustee pursuant to 11 U.S.C. § 1104;

and (ii) to approve protective advances by the Lender and use of cash collateral to maintain the real property located at 9201 4th Avenue, Brooklyn, New York (the "Property").

3. As set forth in the Debtor's Limited Objection, submitted herewith, the Debtor does not object to the Receiver maintaining the Property provided certain conditions are in place. I submit this Declaration to set forth the factual background as to the appointment of the Receiver and the events which precipitated the within bankruptcy case.

**The Debtor and the Property**

4. The Debtor is a Delaware limited liability company. SPL Member is the sole owner of the Debtor and is owned by various members comprised of individuals and trusts who are largely from the following three families: (a) the Spiropoulos family (my family); (b) the Silvestri Family; and (c) the Pappas family.

5. The Property is the Debtor's principal asset. It is a mixed-use office and retail building with 7-story plus mezzanine level, lower level and 6-level below grade parking garage. The Property consists of 71,140 square feet. The Property is unlike any other in the area because it has a 36,000 square foot parking garage with 189 parking space.

6. Pursuant to the SPL Member operating agreement, the managing members of SPL Member LLC are James Pappas ("J. Pappas"), Robert Silvestri ("Silvestri") and myself. J. Pappas and his father Steven Pappas ("S. Pappas"), who is the principal of Xemex LLC ("Xemex"), one of the three petitioning creditors, managed the Property until, as detailed below, they were ousted from management after discovery that they had looted the company and mismanaged the Property for years.

**The Debtor's Loan with New York Community Bank**

7. On or about May 22, 2017, the Debtor executed and delivered to New York Community Bank ("NYCB") an amended and restated mortgage note in the principal amount of $16,400,000 (the "Note").

8. From the date of execution of the Note until April 2020, the Debtor made every payment due thereunder.

9. In March of 2020, tenants of the Property ceased paying rent as a result of the COVID-19 pandemic.

10. As a result of the tenants' failure to pay rent, the Debtor was unable to pay the monthly debt service due under the Note commencing in April 2020.

11. On April 8, 2020, NYCB and the Debtor entered into a "COVID-19 Relief Agreement – Principal and Interest Deferral for 6 Months" (the "First Modification"). Annexed hereto as Exhibit A is a true and accurate copy of the First Modification. The First Modification provided that "Borrower's obligations to make the six (6) scheduled monthly payments due between 4/1/2020 and 9/1/202 inclusive (the "Deferred Payments"), is deferred to the maturity date of the loan[, which is June 1, 2027]. Regular monthly payments shall resume with the payment due 10/1/2020." Id.

12. As the tenants continued not to pay rent, the Debtor was unable to resume monthly payments on October 1, 2020. As a result, on October 5, 2020, NYCB and the Debtor entered into a second "COVID-19 RELIEF AGREEMENT – INTEREST ONLY FOR 6 MONTHS" (the "Second Modification"). Annexed hereto as Exhibit B is a true and accurate copy of the Second Modification. The Second Modification provided that "Borrower's obligations is to make interest

3

only payments on a monthly basis for the payments 10/1/2020 through 3/1/2021. Regular monthly payments of principal and interest shall resume with payment due 4/1/2021." Id.

13. On January 1, 2021 and February 1, 2021, the Debtor defaulted under the Second Modification by failing to pay the monthly interest payments then due.

14. On February 17, 2021, NYCB sent the Debtor a letter demanding delinquent mortgage payments for January 1, 2021 and February 1, 2021 as well as accrued late charges of $16,036.38 (the "February Default Notice"). Annexed hereto as Exhibit C is a true and accurate copy of the February Default Notice. The February Default Notice did not reference any default interest owed by the Debtor. Id.

15. On March 9, 2021, NYCB sent the Debtor a letter accelerating the loan (the "Acceleration Letter"). Annexed hereto as Exhibit D is a true and accurate copy of the Acceleration Letter. The Acceleration Letter advised that the Debtor defaulted on the loan as set forth on the February Notice. Id.

**Debtor Locates Financing and Requests Payoff From NYCB**

16. Commencing in the winter of 2020, the Debtor began seeking third-party financial investors to invest in the Property in order for the Debtor to pay off its accruing debt with NYCB and to ensure needed capital improvements to the Property were made as more particularly described below.

17. Simultaneously, the Debtor was also seeking a loan modification from NYCB.

18. In or around April of 2021, the Debtor located Valyrian Capital, LLC ("Valyrian"), a Connecticut limited liability company, as a white knight, to partner with the Debtor in recapitalization and repositioning of the Property, to pay off the outstanding debt owed under the Note, and to make significant capital improvements to the Property.

4

19.     On or about April 6, 2021, after NYCB rejected the Debtor's requests for a loan modification, the Debtor requested a payoff letter from NYCB effective May 1, 2021.

20.     NYCB evaded this request by either not responding to follow-up emails or by making continuing unfulfilled assurances that they would provide said letter soon and then not providing it.

21.     On or about April 15, 2021, the Debtor requested a payoff letter effective May 1, 2021.

22.     NYCB again evaded this request.

23.     On April 19, 2021, NYCB assigned the underlying note and mortgage to Signature.

24.     On April 3, 2021, prior to NYCB assigning the note and mortgage to Signature, I received a phone call from Tim Ziss ("Ziss"), the principal of Signature.  Ziss stated that he had already purchased the loan from NYCB.

25.     Ziss further stated that he planned to foreclose NYCB's mortgage on the Property and that, after doing so, the tax implications would be astronomical.  Ziss also stated that if the Debtor did not sign an agreement with him within twelve (12) days, the Debtor would lose the Property.

**The Foreclosure Action**

26.     On May 25, 2021, Signature commenced an action in the Supreme Court of New York, Kings County (the "State Court") entitled *Signature Lien Acquisitions III LLC v. SPL Partners LLC*, Index No. 512538/2021 (the "Foreclosure Action") seeking to foreclose its mortgage on the Property.

27. In connection with the Foreclosure Action, on July 14, 2021, the State Court entered an Order appointing Gregory LaSpina, Esq. (the "Receiver") as receiver of the Property pursuant to RPAPL § 1325(1).

28. On July 27, 2021, the Debtor filed an Answer in the Foreclosure Action and asserted Counterclaims against Signature for tortiously interfering with its contract with NYCB.

29. As Signature also refused to provide the Debtor with a payoff statement, on June 14, 2021, the Debtor was forced to file a motion to compel a payoff statement from Signature.

30. On September 15, 2021, the State Court entered an Order compelling Signature to provide a payoff statement within ten (10) days of service of such decision and order with notice of entry. Annexed hereto as Exhibit "E" is a true and accurate copy of the September 15, 2021 Order.

31. As the Order was entered after the date the involuntary bankruptcy case was filed against the Debtor, Signature took the position that the automatic stay excused the Lender from providing the payoff statement. While the Debtor objected to such position, the Order of Relief was entered before the State Court addressed such issue.

**The Proof of Claim filed by Signature and the Alleged Default Interest on the Loan**

32. On November 1, 2021, Signature filed a proof of claim against the Debtor's estate in the amount of $20,680,550 (the "Lender's Claim"). See Claim No. 1.

33. The Debtor maintains that the Lender's proof of claim overstates default interest due on the loan.

34. The Debtor further objects to the prepayment penalty and the attorneys' fees and costs alleged to be due from the Lender.

35. Although the Proof of Claim is overstated, it is a marked improvement from prior communications with Signature. When Ziss first contacted me on April 3, 2021, prior to Signature's purchase of the loan, he claimed that the amount due on the loan was approximately $25.5 million.

**Condition of the Property**

36. In the Motion, Signature complains that the Property has "suffered years of neglect and now requires immediate repairs". It goes on to argue that the Debtor had its own 2019 engineering report that identified such disrepair. All of this Signature relies upon to argue that "current" management is unfit to operate the Property.

37. Conveniently, Signature neglects to mention that, *for years,* the Property was managed by Xemex, and its principals, S. Pappas and J. Pappas.

38. On January 16, 2019, upon discovery that Xemex, S. Pappas and J. Pappas were looting the company and failing to properly manage the Property, the Debtor terminated the Pappas' managerial authority at the Property and removed J. Pappas from his position as CEO and President of the Debtor. All of this was known by Signature as it is the subject of a lawsuit that the Debtor commenced in the Supreme Court, Kings County against Xemex and the Pappas prior to the Filing Date entitled *SPL Partners LLC v. Xemex, LLC, et al.*, Index No. 518457/2019 (the "Xemex Action") which alleges causes of action for fraud, breach of fiduciary duty, breach of contract and wrongful denial of access to corporation information (the "Xemex Action").[1]

39. In fact, the very engineering report prepared by b-cubed engineering llc (the "Engineering Report") which Signature argues establishes the Debtor's neglect was commissioned by me in order to evaluate the damage done by Xemex and the Pappas.

---

[1] As alleged in the Xemex Action, Xemex and the Pappas made in excess of $3 million of unauthorized withdrawals from the Debtor.

40. In 2019, I personally loaned the Debtor $400,000 to, among other items, hire the professionals to review the Property and prepare the Engineering Report.

41. Although the Engineering Report is dated May 24, 2019, the Debtor did not receive the completed report until January of 2020. Upon receipt of the Engineering Report, I recognized the need to remedy various violations set forth therein. I requested a capital call from the members of SPL Members in order to fund such repairs. The members, which include the Pappas family who caused the very conditions set forth in the report, voted against the capital call.

42. As such and as referenced above, the Debtor sought to obtain funding to conduct the repairs and located Valyrian, who was prepared to provide the funding to repair the Property. A deal was not consummated with Valyria because as set forth above no payoff statement was forthcoming from NYCB and the Debtor's prior counsel actually had to file a motion in the Foreclosure Action to obtain a payoff statement from Signature. This (coupled with the fact that the building was shut down for some time due to COVID-19) delayed the repairs being conducted on the Property.

43. Furthermore, to the extent Signature complains that the Debtor has failed to collect rent, the bulk of the rent is due from Lundy's Management Corp. ("Lundy's"), an entity whose principal and sole shareholders are the Pappas. In the Xemex Action, the Debtor seeks repayment of approximately $300,000 of rent from Lundy.

44. Prior to the appointment of the Receiver, the Debtor took what action it could to deal with its non-paying tenants. The Debtor served rent demands on all tenants at the Property and expected either payment in full of all arrears owing and due or, if they fail to pay, the Debtor planned commence non-payment actions in the Supreme Court of New York against them. Prior

to the appointment of the Receiver, the Debtor had also already worked out partial payment of rental arrears from some tenants, and settled completely with others.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

/s/ Demetrios Spiropoulos<br>**DEMETRIOS SPIROPOULOS**

Dated:  December 9, 2021