**Presentment Date and Time: March 1, 2022 at 12:00 noon**
**Hearing Date and Time: To Be Determined**

Matthew G. Roseman, Esq.
Michael Kwiatkowski, Esq.
CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
T: (516) 357-3700
mroseman@cullenllp.com
mkwiatkowski@cullen.com

*Counsel to New York Community Bank*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

     SPL PARTNERS, LLC,

                  Debtor.
-----------------------------------------------------------------X

Chapter 11

Case No. 21-42248 (ESS)

## OBJECTION OF NEW YORK COMMUNITY BANK TO DEBTOR'S MOTION SEEKING ORDER, PURSUANT TO FED. R. BANKR. P. 2004, AUTHORIZING THE DEBTOR TO EXAMINE NEW YORK COMMUNITY BANK AND SERVE A *SUBPOENA DUCES TECUM*

**TO THE HONORABLE ELIZABETH S. STONG,**
**UNITED STATES BANKRUPTCY JUDGE:**

     New York Community Bank ("NYCB"), by and through its counsel, Cullen and Dykman LLP, respectfully files this objection ("Objection") to the *Application by the Debtor for an Order Pursuant to Fed. R. Bankr. P. 2004 Authorizing the Examination of New York Community Bank and Service of a Subpoena Duces Tecum* [ECF No. 55] (the "Motion") filed by debtor SPL Partners LLC (the "Debtor"). In connection with the Objection, NYCB relies upon the *Affidavit of Mitchel A. Baffa* sworn to on February 22, 2022 (the "Baffa Affidavit"), which is being filed

contemporaneously with this Objection, incorporated herein by reference, and respectfully states as follows:

## PRELIMINARY STATEMENT

1.    The Debtor requests that this Court authorize, pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"), an examination of NYCB and service of a *subpoena duces tecum* upon NYCB. The information and documents sought by the Debtor primarily relate to Debtor's default and the amount due on a loan extended to the Debtor by NYCB and subsequently sold by NYCB prior to the commencement of this bankruptcy case.

2.    NYCB objects to the Motion and believes it should be denied by this Court. The application serves no legitimate purpose. Further, the Motion fails to establish the requisite "good cause" that would warrant Rule 2004 relief. Moreover, the Rule 2004 request is barred by the fact that there is a pending litigation between the parties.

3.    As a matter of law, an examination under Rule 2004 may not be used as a substitute for pending litigation. The factual allegations that underlie the instant Motion are already subject of a pending state court foreclosure action commenced by the purchaser of the subject loan against, among others, the Debtor. In that foreclosure action, the Debtor commenced a third-party action against, among others, NYCB based on the same allegations that underlie the instant Motion. As such, the information and documentation that the Debtor seeks by the Motion is the same information and documentation that it may seek in that state court litigation. While that state court litigation is ostensibly stayed due to this bankruptcy filing, the Debtor has notably elected not to remove that proceeding to this Court.

4.    The Debtor has also not demonstrated the requisite "good cause" needed to obtain Rule 2004 discovery. The "good cause" standard requires the Debtor to show that either (i) the

requested examination is necessary to establish any claim, or (ii) denial of the requested examination would cause undue hardship or injustice to the Debtor. The Debtor cannot establish either of these prongs.

5. Instead, the Debtor appears intent on harassing NYCB because NYCB elected to sell the subject loan after the Debtor defaulted on the loan. The Motion casts aspersions on NYCB by claiming that it somehow improperly refused to provide the Debtor with a payoff quote for the subject loan and selling the loan. However, the Debtor chooses to ignore the fact that the agreement between the Debtor and NYCB expressly provided NYCB with the unqualified right to sell, transfer or assign the subject loan. NYCB elected to exercise that right after the Debtor defaulted on its obligations under the loan documents. Because NYCB elected to sell the subject loan after the Debtor defaulted, the Debtor is now pursuing NYCB in clear hopes of finding any shred of evidence to support its baseless allegations and claims asserted against NYCB in connection with the state court third-party action. This is a clearly improper purpose for a Rule 2004 examination.

**RELEVANT FACTUAL BACKGROUND**

6. On or about May 22, 2017, NYCB extended a loan to the Debtor in the amount of $16,400,000 (the "Loan"). Baffa Affidavit, ¶ 3. The Loan was memorialized by, among other things, a *Consolidation, Modification and Extension Agreement, Assignment of Leases and Rents and Security Agreement* dated May 22, 2017 ("Consolidated Mortgage") granting a mortgage lien on Debtor's property located at 9201 4th Avenue, Brooklyn, New York 11209 ("Property"). Baffa Affidavit, ¶ 3. A true and correct copy of the Consolidated Mortgage is attached to the Baffa Affidavit as **Exhibit A**. As part of the Consolidated Mortgage, the Debtor executed a *Mortgage, Assignment and Leases and Rents and Security Agreement* dated May 22, 2017,

3

which set out the amended and restated terms of the Consolidated Mortgage. *See* Baffa Affidavit, Ex. A (Consolidated Mortgage, ¶ 3, Ex. C).

7. After the Debtor defaulted on its obligations under the loan documents and NYCB served a default letter on the Debtor, NYCB accelerated the Loan by letter dated March 9, 2021. Baffa Affidavit, ¶ 4. A true and correct copy of the March 9, 2021 acceleration letter is attached to the Baffa Affidavit as **Exhibit B**.

8. On April 6, 2021, the Debtor, through counsel, requested a payoff quote from NYCB. Baffa Affidavit, ¶ 5. Notably, in connection with the payoff request, Debtor's counsel indicated that the Debtor would "like to get current on the arrears and avoid any foreclosure proceedings," and not satisfy the Loan. Baffa Affidavit, ¶ 5.

9. The *Mortgage, Assignment and Leases and Rents and Security Agreement* dated May 22, 2017, entered as part of the Consolidated Mortgage, expressly authorized NYCB to sell the Loan, providing:

> **Section 14.1    Transfer of Loan.**
>
> Lender may, at any time, sell, transfer or assign the Mortgage, Loan and/or Loan Documents, or grant participation therein (**"Participation"**) or issue mortgage pass-through-certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (**"Securities"**).

Baffa Affidavit, ¶ 6, Ex. A (Consolidated Mortgage, Ex. C, Mortgage, Assignment and Leases and Rents and Security Agreement, § 14.1).

10. On April 19, 2021, NYCB sold the Loan to Signature Lien Acquisitions III LLC ("Signature"). Baffa Affidavit, ¶ 7. This was a mere nine business days from the receipt of Debtor's payoff request.

11. As set forth in the Motion, prior to commencement of this bankruptcy case, Signature commenced a foreclosure action ("Foreclosure Action") against, among others, the Debtor with respect to the Property, which Foreclosure Action is pending in the Supreme Court of the State of New York, Kings County Index No. 512538/2021. Motion, ¶ 13.

12. On July 27, 2021, the Debtor filed a third-party action in the Foreclosure Action against, *inter alia*, NYCB by filing a *Third Party Summons* and *Third Party Complaint*. Baffa Affidavit, ¶ 8. The Debtor subsequently amended the third-party action against, *inter alia*, NYCB by filing an *Amended Third Party Summons* and *Amended Third Party Complaint* on August 17, 2021. Baffa Affidavit, ¶ 8. True and correct copies of the *Amended Third Party Summons* and *Amended Third Party Complaint* filed by the Debtor in the Foreclosure Action are attached to the Baffa Affidavit as **Exhibit C**.

## ARGUMENT

### Legal Standard in Connection with Rule 2004 Motion

13. The relief requested in the Motion is inappropriate. Rule 2004 provides, in relevant part, that the "court may order the examination of any entity," but that such examination is limited to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to discharge . . . . and any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(a)-(b). Generally, "[t]he purpose of a Rule 2004 examination is to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, [so] that the rights of the creditor may be preserved." *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citations and quotation marks omitted).

14. "The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and relief lies within the sound discretion of the Bankruptcy Court." *In re AOG Entm't, Inc.*, 558 B.R. 98, 108 (Bankr. S.D.N.Y. 2016). "In granting a Rule 2004 examination request, the bankruptcy court is required to make a finding of good cause for the examination. Good cause is shown if the examination sought is necessary to establish the claim of the party seeking examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re MF Global Inc.*, No. 11-02790 (MG), 2013 WL 74580, *1 (Bankr. S.D.N.Y. Jan. 8, 2013).

15. It is well-established that Courts evaluating a motion pursuant to Rule 2004 should "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination," and specifically find that "good cause" exists for requiring the production of the documents. *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991). *See also In re AOG Entermnt., Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016). Demonstrating good cause is an affirmative burden on the movant and is not satisfied merely by a showing that a document might possibly be relevant or merely because "justice would not be impeded by production of the documents." *Coffee Cupboard*, 128 B.R. at 514 (citation omitted)

16. While the scope of discovery under Rule 2004 is broad, "there are well-established limits" and "case law is replete with holdings that resort to Rule 2004 cannot include discovery conducted in bad faith or for improper purposes." *In re Duratech Indus., Inc.*. 241 B.R. 291, 296 (Bankr. E.D.N.Y. 1999). *See also In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("[T]he availability of Rule 2004 as a discovery tool is not unlimited.") (citation and quotation marks omitted); *Drexel Burnham Lambert*, 123 B.R. at 711 (noting that Rule 2004

can be compared to a "fishing expedition," but recognizing that "the net, in the discretion of the Court, can be carefully stitched to limit its catch"). "[C]ourts may 'limit, condition or even forbid the use of Rule 2004' where it is used to 'abuse or harass[ ] . . . .'" *Martin v. Schaap Moving Sys., Inc.*, No. 97-5042, 152 F.3d 919, 1998 WL 405966 (Table), *3 (2d Cir. Apr. 20, 1998).

### Debtor's Rule 2004 Request is Barred by the "Pending Proceeding" Rule

17. It is well settled that the Debtor cannot utilize a Rule 2004 examination to seek discovery related to a "pending proceeding." Because the Debtor is seeking to do just that, its Rule 2004 discovery request is barred. The "pending proceeding" rule, which generally provides that "'once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004'," likewise "applies to pending state court litigation." *In re Glitnir banki hf.*, No. 08-14757 (SMB), 2011 WL 3652764, *4 (Bankr. S.D.N.Y. Aug. 19, 2011) (citation omitted). "The 'pending proceeding' rule reflects a concern that a party to litigation could circumvent his adversary's rights by using Rule 2004 rather than civil discovery to obtain documents or information relevant to the lawsuit." *Id.* (referencing *Enron*, 281 B.R. at 841). *See also In re Cambridge Analytica LLC*, 600 B.R. 750, 752 (Bankr. S.D.N.Y. 2019) (declining to grant Rule 2004 motion and noting various Courts' concerns with granting Rule 2004 examination "where the party requesting the Rule 2004 examination is to benefit in pending litigation outside of the Bankruptcy Court.").

18. The factual basis for the Motion is the same as the factual allegations underlying the Debtor's third-party action asserted by the Debtor against NYCB in the Foreclosure Action. *See generally* Baffa Affidavit, Ex. E (Amended Third Party Complaint, ¶¶ 11-23) and the Motion, ¶¶ 16-30). As such, the information and documentation that the Debtor intends to request as part of the Rule 2004 examination is similar to the discovery it may seek in connection

with that state court action. This is a clear violation of the "pending proceeding" limitation on Rule 2004 discovery and should not be countenanced by this Court.

### The Motion is Improper – "Good Cause" Has Not Been Shown

19.     Additionally, the Debtor has failed to establish "good cause" to compel Rule 2004 discovery. The Debtor claims that it "seeks to conduct a Rule 2004 examination of NYCB to obtain information concerning when default interest began to accrue on the loan and the circumstances concerning NYCB's refusal to provide a payoff statement to the Debtor, including whether such refusal was at the request of Signature." Motion, ¶ 5. This asserted reason does not establish the requisite "good cause" because, as noted above, the Debtor can potentially serve discovery in the Foreclosure Action and the related third-party action against NYCB. Moreover, the issue of when default interest began to accrue on the Loan is an issue between the Debtor and Signature, the current holder of the subject Loan, and not NYCB. As the Motion noted, Signature filed a proof of claim in this bankruptcy case. Motion, ¶ 36. While the Motion states that the Debtor believes that the filed claim overstates default interest, that is a dispute between the Debtor and Signature, not NYCB, and ostensibly an issue for potential resolution through a claim objection to be filed by the Debtor.

20.     Even if the Debtor has satisfied its initial burden of demonstrating "good cause" and could point to a proper purpose for conducting an examination of NYCB, the Court must still weigh the interests of NYCB against those of the Debtor to determine whether a Rule 2004 examination is proper. *See In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008) (finding that a balancing test is required in Rule 2004 to ensure that the intrusiveness to the proposed examinee is not greater than the putative benefit to the party seeking the discovery). Here, the cost, disruption, and continued abuse and harassment of NYCB

far outweigh any apparent benefit that might accrue to the Debtor through the proposed Rule 2004 examination. *See In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) ("if the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied").

### Debtor's Requests Should be Denied Because They Are Harassing

21.     Lastly, the Debtor's Rule 2004 request is impermissible because it is designed to harass NYCB. *See Enron Corp.*, 281 B.R. at 840 ("Courts have imposed limits on the use of Rule 2004 examinations where the purpose of the examination is to abuse or harass."); *MF Global Inc.*, 2013 WL 74580 at *1 ("Rule 2004 cannot be used for 'purposes of abuse or harassment' . . . .") (citation omitted).

22.     The conjectural allegations underlying the Debtor's state court third-party action against NYCB and the instant Motion are largely based on the fact that NYCB elected to sell the Loan after the Debtor defaulted on its loan obligations. After the default and prior to the sale of the Loan, NYCB continued to communicate with the Debtor, either directly or through counsel. Upon sale of the subject Loan, further communication by NYCB with the Debtor would have been improper because NYCB no longer owned the Loan. The Motion attempts to assert nefarious reasons for NYCB's failure to immediately provide the Debtor with a payoff quote for the Loan and the subsequent sale of the Loan to Signature. The terms of the Consolidated Mortgage entered by the Debtor – a sophisticated party – expressly authorized NYCB to sell the Loan. Baffa Affidavit, Ex. A (Consolidated Mortgage, Ex. C, Mortgage, Assignment and Leases and Rents and Security Agreement, § 14.1 ("[NYCB] may, at any time, sell, transfer or assign the Mortgage, Loan and/or Loan Documents . . . ."). This was NYCB's unqualified contractual right. NYCB exercised that right after the Debtor's default on the Loan.

23. The Debtor requested a payoff quote from NYCB on April 6, 2021, and less than two weeks later (or nine business days), on April 19, 2021, NYCB sold the Loan to Signature. NYCB was not obligated to immediately provide the Debtor with a payoff. For example, N.Y. Real Prop. Law § 274-a(1) allows twenty days for a mortgage holder to provide a payoff statement to a property owner once the property owner makes a request for a payoff in compliance with that section. *See* Real Prop. Law § 274-a(1) (requiring a mortgage holder to provide a payoff statement if the property owner provides a "prior written demand by registered or certified mail" and the property owner "shall have executed and delivered to another a written contract to convey, or shall have received a written commitment to make a mortgage loan upon, the real property or an interest therein," and where the property owner complies with the provision "and who shall not have received the [payoff statement] within *twenty days* after such compliance shall be entitled to petition a court of competent jurisdiction for an order requiring [the mortgage holder] to comply with this section.") (emphasis added). *See also* N.Y. Real Prop. Law § 274-a(2)(a) (providing, for owner-occupied, one-to-six family residential structures, that a mortgage holder has *thirty days* within which to provide a payoff statement upon a written demand). Notably, in requesting the payoff quote, Debtor's counsel indicated that the Debtor was looking to reinstate the Loan and not that the Debtor had an executed sale contract or written loan commitment. *See* Baffa Affidavit, ¶ 5. As such, the Debtor's payoff request would not even qualify as a proper request under New York Real Property Law. *See* Real Prop. Law § 274-a(1).

24. Because NYCB elected to sell the Loan after the Debtor defaulted and, upon the sale of the Loan, no longer continued its relationship with the Debtor, the Debtor is now pursuing baseless claims against NYCB. This Court should not permit the Debtor to utilize Rule 2004 discovery to engage in an unwarranted fishing expedition trying to find evidence to support the

fanciful allegations that there was an ill-defined conspiracy between Signature and NYCB designed to disenfranchise the Debtor. This unsupported theory is implausible – NYCB would have nothing to gain from such imagined conduct.

## CONCLUSION

25. In conclusion, NYCB believes the Motion should be denied. The Debtor fails to provide a "good cause" for the Rule 2004 request. Moreover, the request is barred by the "pending proceeding" rule and is clearly designed to harass NYCB.

WHEREFORE, NYCB respectfully requests that the Court deny the relief requested in the Motion and grant such other relief as is just and proper.

Dated: Garden City, New York
February 22, 2022

                                                CULLEN AND DYKMAN LLP

By:     */s/ Matthew G. Roseman*
        Matthew G. Roseman
        Michael Kwiatkowski
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
T: (516) 357-3700
mroseman@cullenllp.com
mkwiatkowski@cullen.com

*Counsel to New York Community Bank*

20273624