**HEARING DATE AND TIME:  July 8, 2022 at 10:30 a.m. EST**
**OPPOSITION DEADLINE: July 1, 2022 at 4:00 p.m. EST**

Melissa A. Peña, Esq.
**NORRIS McLAUGHLIN, P.A.**
7 Times Square, 21st Floor
New York, New York  10036
Phone:  212-808-0700
Fax:  212-808-0844
mapena@norris-law.com
*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

In re:                                                            Chapter 11

SPL PARTNERS, LLC,                               Case No. 21-42248 (ESS)

                              Debtor.

-------------------------------------------------------X


**MOTION BY SPL PARTNERS LLC, THE DEBTOR/DEBTOR-IN-POSSESSION, FOR ENTRY OF AN ORDER, PURSUANT TO RULE 3007 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND 11 U.S.C. §§ 105 AND 502, REDUCING THE CLAIM OF SIGNATURE LIEN ACQUISITIONS III LLC**

TO THE HONORABLE ELIZABETH S. STONG
UNITED STATES BANKUPTCY JUDGE

SPL Partners LLC, the debtor and debtor-in-possession (the "Debtor"), by its counsel, Norris, McLaughlin, PA, submit this motion (the "Motion") seeking the entry of an Order, substantially in the form annexed hereto as Exhibit "A," pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and 11 U.S.C. §§ 105(a) and 502(a) (the "Bankruptcy Code"), reducing Claim No. 1-1 filed by Signature Lien Acquisitions III LLC ("Signature" or "Lender"), and respectfully represents as follows:

## JURISDICTION AND VENUE

1.       The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157(a) and 1334.

2.       Venue of this case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

4.       This Motion is made pursuant to, *inter alia*, 11 U.S.C. §§ 105(a) and 502(a) and Bankruptcy Rule 3007.

## BACKGROUND

### The Bankruptcy Case

5.       On August 31, 2021 (the "Filing Date"), Xemex LLC, Stacey Angelides and Angelo Gerosavas (collectively "Petitioning Creditors") filed an involuntary petition against the Debtor pursuant to chapter 11 of the Bankruptcy Code.  *See* Docket No. 1.

6.       On October 4, 2021, the Court "So Ordered" a Stipulation extending the time for the Debtor to respond or otherwise move with respect to the involuntary petition through and including October 8, 2021.  *See* Docket No. 12.

7.       On October 8, 2021, the Debtor consented to be adjudicated a Chapter 11 debtor without prejudice to its right to object to the validity and amount of Petitioning Creditors' claims. *See* Docket No. 13.

8.       On October 26, 2021, the Court entered an Order for Relief in this case.  *See* Docket No. 16.

### The Debtor and the Property

9.       The Debtor is a Delaware limited liability company.  SPL Member LLC ("SPL Member") is the sole owner of the Debtor and is owned by various members comprised of individuals and trusts.  *See* Declaration of Demetrios Spriopoulos ("Spriopoulos Dec."), ¶ 3.

10.     The Debtor's principal asset is real property located at 9201 4th Avenue, Brooklyn, New York (the "Property").  The Property is a mixed-use office and retail building with 6-story plus mezzanine level, lower level and 6-level below grade parking garage.  The Property consists of 71,140 square feet.  The Property is unlike any other in the area because it has a 36,000 square foot parking garage with 189 parking space.  *See* Spriopoulos Dec., ¶ 4.

**The Debtor's Loan with New York Community Bank**

11.     On or about May 22, 2017, the Debtor executed and delivered to New York Community Bank ("NYCB") an amended and restated mortgage note in the principal amount of $16,400,000 (the "Note").  *See* Spriopoulos Dec., ¶ 5 and Exhibit A thereto.

12.     From the date of execution of the Note until April 2020, the Debtor made every payment due thereunder.  *See* Spriopoulos Dec., ¶ 6.

13.     In March of 2020, tenants of the Property ceased paying rent as a result of the COVID-19 pandemic.  *See* Spriopoulos Dec., ¶ 7.

14.     As a result of the tenants' failure to pay rent, the Debtor was unable to pay the monthly debt service due under the Note commencing in April 2020.  *See* Spriopoulos Dec., ¶ 8.

15.     On April 8, 2020, NYCB and the Debtor entered into a "COVID-19 Relief Agreement – Principal and Interest Deferral for 6 Months" (the "First Modification").  *See* Spriopoulos Dec., ¶ 9 and Exhibit A thereto.

16.     The First Modification provided that "Borrower's obligations to make the six (6) scheduled monthly payments due between 4/1/2020 and 9/1/202 inclusive (the "Deferred Payments"), is deferred to the maturity date of the loan[, which is June 1, 2027].  Regular monthly payments shall resume with the payment due 10/1/2020."  *See* Spriopoulos Dec., ¶ 10.

17.     As the tenants continued not to pay rent, the Debtor was unable to resume monthly payments on October 1, 2020.  As a result, on October 5, 2020, NYCB and the Debtor entered into a second "COVID-19 RELIEF AGREEMENT – INTEREST ONLY FOR 6 MONTHS" (the "Second Modification").  *See* Spriopoulos Dec., ¶ 11 and Exhibit B thereto.

18.     The Second Modification provided that "Borrower's obligations is to make interest only payments on a monthly basis for the payments 10/1/2020 through 3/1/2021.  Regular monthly payments of principal and interest shall resume with payment due 4/1/2021."  *See* Spriopoulos Dec., ¶ 12.

19.     On January 1, 2021 and February 1, 2021, the Debtor defaulted under the Second Modification by failing to pay the monthly interest payments then due.  *See* Spriopoulos Dec., ¶ 13.

20.     On February 17, 2021, NYCB sent the Debtor a letter demanding delinquent mortgage payments for January 1, 2021 and February 1, 2021 as well as accrued late charges of $16,036.38 (the "February Default Notice").  The February Default Notice did not reference any default interest owed by the Debtor.  *See* Spriopoulos Dec., ¶ 14 and Exhibit C thereto.

21.     On March 9, 2021, NYCB sent the Debtor a letter accelerating the loan (the "Acceleration Letter").  The Acceleration Letter advised that the Debtor defaulted on the loan as set forth on the February Notice.  *See* Spriopoulos Dec., ¶ 15 and Exhibit D thereto.  The Acceleration Letter further stated that the Debtor should contact the bank for a payoff letter if it intended to satisfy the outstanding obligation.  *Id.*

**Debtor Locates Valarian Capital, LLC to Infuse Capital into the Property**

22.     Commencing in the winter of 2020, the Debtor began seeking third-party financial investors to invest in the Property in order for the Debtor to pay off its accruing debt with NYCB

and to ensure needed capital improvements to the Property were made as more particularly described below.  *See* Spriopoulos Dec., ¶ 16.

23.     Simultaneously, the Debtor was also seeking a further loan modification from NYCB, following the aforementioned ones executed in April 2020 and October 2020, respectively. *Id.*

24.     In or around April of 2021, the Debtor located Valyrian Capital, LLC ("Valyrian"), a Connecticut limited liability company, as a white knight, to partner with Debtor in recapitalization and repositioning of the Property, to pay off the outstanding debt owed under the Note, and to make significant capital improvements to the Property.  *See* Spriopoulos Dec., ¶ 17.

25.     Valyrian committed to provide substantial funding to the Debtor to make capital improvements to the Property and was prepared to obtain financing for the Debtor.  It simply required that the Debtor obtain a payoff statement from NYCB.  *Id.*

**Signature Threatens Debtor Prior to the Lender Acquiring the Loan and Signature Directs NYCB Not to Provide the Debtor a Payoff Statement**

26.     Prior to acquiring the loan from NYCB, Signature, through its principal Tim Ziss ("Ziss"), nonetheless, began contacting the Debtor.  On April 1, 2021, Peter Vasilakos ("Vasilakos") (an accountant with a relationship with both Ziss and the Debtor) sent Spiropoulos a text message advising that Ziss wanted to speak with him.  Spriopoulos Dec., ¶ 19 and Exhibit E thereto.

27.     On April 1, 2021, in respondent to a text message Spiropoulos received from Vasilakos, Spiropoulos contacted Ziss by telephone, who misrepresented that Signature had already purchased the loan from NYCB.[1]  *See* Spriopoulos Dec., ¶ 20.  Ziss further stated that he

---

[1] This is not the only instance where Ziss attempted to negotiate before he owned the actual asset.  Ziss has a pattern of trying to "pull one over" for his own financial benefit. Indeed, he has previously paid others to negotiate the sale of real estate before even owning the property. Katie Honan, *The Secret Lobbying Behind Why NYC Schools Paid $25*

planned to foreclose on the Debtor and that, after doing so, the tax implications would be astronomical. *Id.* Ziss threatened that if the Debtor did not sign an agreement with him within twelve (12) days, the Debtor would lose the Property. *Id.*

28.     Thereafter, on April 4, 2021, Ziss followed his telephone call to Spiropoulos with a text message where he stated as follows: "We have a very small window possible manage [sic] a potentially devastating financial outcome for all that hold interest in the property with low or negative tax bases. I have reached out to all offering assistants several times, it's now up to each One of you to act with urgency." *See* Spriopoulos Dec., ¶ 21 and Exhibit F.

29.     Ziss went on to text Spriopoulos as follows: "I will not accept any blame if we aren't able to come to an agreement by this coming Thursday. The alternative will Likely result to multi million dollar tax liability." *See* Spriopoulos Dec., ¶ 22. Thus, Ziss demanded a resolution by April 8, 2021 – again when he was not even the holder of the Note. *Id.*

30.     On April 6, 2021, Ziss also texted Spriopoulos that on April 5, 2021, he met with Steve Pappas, the principal of Xemex, LLC – one of the petitioning creditors and a relatively of an equity interest holder in SPL Member, and urged Pappas to reach an agreement with him. *See* Spriopoulos Dec., ¶ 23.

31.     NYCB suspected that Signature was communicating with the Debtor. On April 9, 2021, NYCB's counsel wrote to Signature's counsel, Yaron Kornblum, Esq., and informed him

---

*Million for a Former Nathan's Famous Hot Dog Location*, CHALKBEAT NEW YORK (May 23, 2022 at 10:06 PM), https://ny.chalkbeat.org/2022/5/23/23139030/nyc-school-construction-authority-scissura-lobbying-nathans-hot-dog. In other instances, his financial benefit is at the disadvantage of tenants through his egregious conduct. Katie Honan and Yoav Gonen, *Eric Adam's Would-Be Economic Dzar Remain in Private Sector*, THE CITY (Feb. 7, 2022 at 5:52 PM), https://www.thecity.nyc/2022/2/7/22922499/eric-adams-economic-czar-private-sector. In fact, "City housing officials who've crossed paths with Ziss have done everything they can to keep him away from the project out of concern for the tenants – and have been fighting to sell the property to a different owner." Katie Honan, *Adams' Likely Economic Czar Got Hired to Fight Queens Affordable Housing Rescue*, The City (Jan. 17, 2022 at 8:48 PM), https://www.thecity.nyc/queens/2022/1/17/22884599/adams-economic-czar-queens-affordable-housing-fight.     *See* Spriopoulos Dec., ¶ 20 and Exhibit H thereto.

that Ziss' communications with the Debtor violated the parties Mortgage Loan Purchase Agreement, which required that Ziss refrain from communicating with the Debtor. *See* Spriopoulos Dec., ¶ 24; *see also* Exhibit D to Affidavit of Mitchel Baffa ("Baffa Aff."), submitted herewith as Exhibit "B."

32.    Despite Ziss having contacted the Debtor by telephone and text, Mr. Kornbulm advised NYCB's counsel as follows: "I have spoken to my client *who denies in the entirety* that he approached the Borrower or it's representatives. It's a very small community and the information may have leaked, but not due to my clients actions." Spriopoulos Dec., ¶ 25 (emphasis added).

33.    Subsequent thereto, on April 6, 2021, the Debtor requested a payoff letter from NYCB effective May 1, 2021 to enable it to proceed with a refinancing with Valaryian as its partner. *See* Spriopoulos Dec., ¶ 26.

34.    NYCB's counsel informed Signature that it intended to provide the Debtor with the payoff statement it requested. *See* Baffa Aff. at ¶ 8, Ex. D. In response, on April 9, 2021, Signature's counsel stated as follows: ". . . my client is going to be closing next week so why can't we hold off on payoff. Don't we have time from the time of their request?." *Id.* at Exhibit D.

35.    On April 11, 2021, Vasilakos texted Spriopoulos to inform that Ziss offered Steve Pappas $1 million if the Pappas family would sign over the Property to Ziss. *See* Spriopoulos Dec., ¶ 28.

36.    Anxious to proceed with Valyrian and having not received a response from NYCB, on April 15, 2021, Debtor reiterated its request to NYCB for a payoff letter effective May 1, 2021. *See* Spriopoulos Dec., ¶ 29. NYCB did not respond to this request.

37.     On April 19, 2021, NYCB assigned the underlying note and mortgage to Signature. *See* Spriopoulos Dec., ¶ 30.

**Foreclosure Action**

38.     After the closing on the loan purchase, with default interest accruing on the loan at a per diem rate of in excess of $8,000 per day, Signature believed it had "time" to respond to the Debtor's request for a payoff statement and decided it would not provide same.

39.     Instead of providing the Debtor with a payoff statement to enable it to payoff the loan, on May 25, 2021, Signature commenced an action in the Supreme Court of New York, Kings County (the "State Court") entitled *Signature Lien Acquisitions III LLC v. SPL Partners LLC*, Index No. 512538/2021 (the "Foreclosure Action") seeking to foreclose its mortgage on the Property.  *See* Spriopoulos Dec., ¶ 31.

40.     In connection with the Foreclosure Action, on July 14, 2021, the State Court entered an Order appointing Gregory LaSpina, Esq. (the "Receiver") as receiver of the Property pursuant to RPAPL § 1325(1).  *See* Spriopoulos Dec., ¶ 32.

41.     On July 27, 2021, the Debtor filed an Answer in the Foreclosure Action and asserted Counterclaims against Signature for tortiously interfering with its contract with NYCB. *See* Spriopoulos Dec., ¶ 33.

42.     As Signature persisted in its refusal to provide the Debtor with a payoff statement, on June 14, 2021, the Debtor was forced to file a motion to compel a payoff statement from Signature.  *See* Spriopoulos Dec., ¶ 34.  Signature opposed such motion refusing to provide the amount owed on the loan absent the Debtor's production of a contract of sale or loan commitment. *Id.*

43.     On September 15, 2021, the State Court entered an Order compelling Signature to provide a payoff statement within ten (10) days of service of such decision and order with notice of entry.  *See* Spriopoulos Dec., ¶ 35 and Exhibit G thereto.

44.     As the Order was entered after the Filing Date, Signature took the untenable position that the automatic stay excused the Lender from providing the payoff statement.  While the Debtor objected to such position, the Order of Relief was entered before the State Court addressed such issue.  *See* Spriopoulos Dec., ¶ 36.

**The Proof of Claim filed by Signature and the Alleged Default Interest on the Loan**

45.     On November 1, 2021, Signature filed a proof of claim against the Debtor's estate in the amount of $20,680,550 (the "Lender's Claim").  *See* Spriopoulos Dec., ¶ 37; *see also* Claim No. 1-1 annexed hereto as Exhibit "C," exclusive of the respective exhibits thereto.  In its proof of claim, Signature calculates the amounts purportedly due to it as follows: (a) principal in the amount of $15,560,099.74; (b) note rate interest at 3.875% from 3/1/2021; (c) default rate interest at 20% from 4/1/2020 to 8/31/2021 at $4,408,684.93; (d) prepayment penalty of $466,802.99; and (e) legal fees of $300,000 less a tax escrow for $105,293.80.  *See* Spriopoulos Dec., ¶ 38.

46.     Although the Proof of Claim is overstated, it is a marked improvement from prior communications with Signature.  When Ziss first contacted Spriopoulos on April 1, 2021, prior to Signature's purchase of the loan, Ziss claimed that the amount due on the loan was approximately $25.5 million.  *See* Spriopoulos Dec., ¶ 39.

**The Debtor's Proposed Chapter 11 Plan and Discovery Obtained from NYCB**

47.     On January 24, 2022, the Debtor filed a Disclosure Statement and proposed Chapter 11 Plan (the "Plan").  As set forth in the Plan, the Debtor maintains that Signature's claim should be reduced for the following reasons: (a) Signature alleges that it is entitled to default interest

commencing from April 1, 2020 (the date that NYCB and the Debtor entered into the First Modification) when the actual default on the loan occurred at best by January of 2021; and (b) Signature should not be entitled to default interest from April 2021 forward as it failed to provide the Debtor with a payoff statement.

## **RELIEF REQUESTED**

48.     By this Motion, the Debtor seek the entry of an Order reducing Claim No. 1-1 to eliminate the default interest sought by the Lender from April 2020 to January 2021 as no default occurred on the subject loan until January 2021.  The Debtor is also challenging the percentage of any prepayment penalty the Lender claims it is entitled to recover from the Debtor.  In addition, the Debtor respectfully submits that, on equitable grounds, the Lender should not be entitled to recoup default interest from April 6, 2021 (the date the Debtor first requested a payoff statement from the Lender) as the Lender failed to provide the Debtor with a payoff statement.

## **POINT I**

### **THE LENDER IS NOT ENTITLED TO DEFAULT INETREST FROM APRIL 2020 AS THERE WAS NO DEFAULT ON THE LOAN UNTIL JANUARY OF 2021.**

49.     Signature's claim for default interest should be reduced as no default occurred on the loan until January 2021 as acknowledged by NYCB and, as a result, the Lender is not entitled to default interest from April 2020 to January 2021.  For Signature to claim otherwise is a gross overstatement and miscalculation regarding the events that lead to the actual default.

50.     While Signature claims that it is entitled to default interest from April 1, 2020, Signature's own loan documents, in fact, provide otherwise.  No default occurred on the loan on April 1, 2020.  Although the Debtor did not make the normal principal and interest payment due on the loan on April 1, 2020, the Debtor and NYCB agreed to the First Modification.  The First Modification provided that "Borrower's obligations to make the six (6) scheduled monthly

payments due between 4/1/2020 and 9/1/2020 inclusive (the "Deferred Payments"), is deferred to the maturity date of the loan[, which is June 1, 2027]. Regular monthly payments shall resume with the payment due 10/1/2020." *Id.* Thus, no default occurred under the loan on April 1, 2020 as NYCB agreed to defer the monthly payments due under the Note from April 1, 2020 through September 1, 2020 to the Maturity Date of the loan.

51.      In October of 2020, on October 5, 2020, NYCB and the Debtor entered into the Second Modification. *See* Exhibit B to the Spiropoulos Dec. The Second Modification provided that "Borrower's obligations is to make interest only payments on a monthly basis for the payments 10/1/2020 through 3/1/2021. Regular monthly payments of principal and interest shall resume with payment due 4/1/2021." The Debtor did not make the January 1, 2021 payment under the Second Modification.

52.      Indeed, NYCB maintains that the default did not occur until January 1, 2021. Signature now attempts to rewrite history and seek default interest from April of 2020 as if the aforementioned modification documents simply do not exist.

53.      Based on the foregoing, the Court should find that Lender is only entitled to default interest from January 1, 2021 going forward.

## POINT II

**SIGNATURE'S DEFAULT INTEREST RATE MUST BE DISALLOWED TO PREVENT UNWARRANTED PENALIZATION OF THE DEBTOR AND TO AVOID INEQUITABLE HARM TO OTHER CREDITORS AND THE DEBTOR'S ESTATE.**

54.      "In a bankruptcy case, interest is the tail of the dog, but it is a long tail and it wags a lot." *Key Bank Nat'l Assoc. v. Milham (In re Milham)*, 141 F.3d 420, 422 (2d Cir. 1998). Despite parties' contractual arrangements which impose default interest rates, the courts in the Second Circuit will use their discretion to depart from enforcing such agreements in the following

instances: (i) there has been creditor misconduct; (ii) application of the contractual interest rate would cause harm to the unsecured creditors; (iii) the contractual interest rate constitutes a penalty; or (iv) its application would impair the debtor's fresh start. *In re Gen. Growth Properties, Inc.*, 451 B.R. 323, 328 (Bankr. S.D.N.Y. 2011); *see also In re 1111 Myrtle Ave. Grp., LLC*, 598 B.R. 729, 740 (Bankr. S.D.N.Y. 2019) (finding equitable reduction of default rate is appropriate in extreme situations where secured creditor is guilty of misconduct, default rate would harm unsecured creditors, or default rate would impair debtor's fresh start); *In re Gen. Growth Props., Inc.*, No. 09-11977 (ALG), 2011 WL 2974305, at *3 (Bankr. S.D.N.Y. July 20, 2011) (recognizing instances where courts have invalidated default interest rates including where payment of default interest would impair debtor's fresh start or deprive debtor of benefits accrued from the chapter 11 filing); *In re Hollstrom*, 133 B.R. 535, 541 (Bankr. D. Colo. 1991) (considering "the Code and applicable case law, the facts of this case, and the equitable principles of distribution among creditors" when ruling to deny secured creditor's default interest rate).

55.    Each of the above instances constitutes *independent* grounds for the Court to deny Signature default interest.  First, the Court should not reward Signature for its refusal to provide the payoff statement.  In early April of 2021, Signature threatened the Debtor that if no agreement was reached between the parties, there would be substantial tax ramifications.  At the time, Signature was not even the holder of the subject note and mortgage.  This did not stop Signature from threatening the Debtor and, simultaneously, denying to NYCB that it was communicating with its borrower.

56.    Signature's conduct did not stop there.  After urging NYCB not to provide the Debtor with a payoff statement after it acquired the loan, Signature persisted in its refusal to provide a payoff statement.  At all times, the Debtor had Valyrian waiting in the wings to provide

the necessary capital to effectuate a refinancing.  As a result of Signature's conduct, the Debtor was forced to file a motion in the Foreclosure Action to compel the production of a payoff statement.  Hell bent on not getting a quick payoff of the loan, Signature opposed the motion.  Even after the state court entered an Order requiring Signature to provide a payoff statement in ten days, Signature still refused to provide same.  Indeed, no payoff statement was ever provided.  Signature simply filed its overstated proof of claim as its bankruptcy counsel likely informed the Lender that its past conduct would not be acceptable before this Court.

57.     The only conceivable motive for a lender refusing to provide a payoff statement is to drive up default interest.  With default interest accruing at $8,644.50 per day, Signature's reasoning was consistent with what its counsel told NYCB – "Don't we have time . . ." to respond to the Debtor's request.

58.     Had Signature timely provided a payoff statement, the Debtor could have restructured the obligation and avoided the within bankruptcy case and the incurrence of close to $3 million in default interest.  The Debtor should not be prejudiced and forced to suffer due to improper actions taken by the Lender.  *See In re Sheba Realty Corp.*, No. 12-75455-dte, 2014 WL 1373094, at *1 (Bankr. E.D.N.Y. Mar. 27, 2014) (sustaining debtor's objection to secured creditor's claim regarding percentage of default interest rate of 20% because of an improper acceleration of the underlying mortgage); *see also In re Campbell*, 513 B.R. 846, 852-53 (Bankr. S.D.N.Y. 2014) (rejecting creditor's entitlement to prepetition default interest where creditor "failed to establish the fact or date of acceleration, and it appears that [creditor] and its predecessors have not been forthright concerning the issue").

59.     Second, the Court should deny the default interest as it constitutes a penalty, which is completely divorced from any harm sustained by the Lender.  Courts should deny a default

interest rate which would effectively swallow the debtor's assets and serve as nothing more than a harsh penalty as against other creditors, or even the debtor's estate. *See In re Vest Assocs.*, 217 B.R. at 703 (denying creditor's request for 15% default interest rate subject to renewal should the debtor prove to be solvent).

60.     "Absent contrary evidence, a default interest rate that is inordinately high relative to the non-default rate will found to be a penalty." *In re Liberty Warehouse Assocs. Ltd. P'ship*, 220 B.R. 546, 552 (Bankr. S.D.N.Y. 1998) (collecting cases); *see also In re Hollstrom*, 133 B.R. at 541 (disallowing secured creditor's default interest rate noting that an excessive default interest rate imposed by a secured creditors serves as a penalty against other creditors, and specifically unsecured creditors who are "already probably taking a substantial hit on their claims").

61.     Here, the default interest rate is 20% or $8,644.50 per day.  Calculating default interest from April 6, 2021 (the date the Debtor first asked for a payoff statement) through May 23, 2022 amounts to $3,561,534.  Worse yet, the default rate itself bears no relationship to the economic loss experienced by Signature and that 20% rate can only be viewed as a penalty, rendering it unenforceable in bankruptcy.  *In re White*, 88 B.R. 498, 504 (Bankr. D. Mass. 1988) (finding that even where the default interest rate was not usurious, an interest rate that was unreasonably and grossly disproportionate to the real damages suffered by creditor from debtor's prepetition default was unenforceable).  The Lender has not and cannot show that they have been damaged by the default to such an extent that it warrants imposition of a default rate in excess of $8,000 per day.  As a result of the Debtor's default, the Lender incurred attorneys' fees totaling approximately $300,000, which they are separately seeking to recoup, and, thus, the Lender is being compensated for its harm.  The Lender is also asserting its entitlement to prepayment premium, which is an additional source of extra funding from the Debtor the Lender is seeking to

recover with respect to its claim.  Absent a showing by the Lender that they sustained harm in such an amount as to warrant the imposition of the default rate, it is simply a penalty that should not be enforced by this Court.

62.    Third, the application of the default rate would cause harm to unsecured creditors and impair the Debtor's fresh start.  The Debtor's unsecured creditor body amounts to approximately $4,337,843.11.[2]  The facts of this case are akin to those "extreme situations" discussed by the court in *1111 Myrtle Ave. Grp.*, whereby imposition of the default interest rate upon the Debtor would not only impair the Debtor's ability to have a fresh start, but also harm the unsecured creditors.  This Court must account for the facts of this case and the equitable principles of distribution that are inherent to bankruptcy matters and find imposition of the 20% default interest rate upon this Debtor is an inordinately high rate and will penalize other creditors of the Debtor, especially the unsecured creditors.  This 20% default interest rate would essentially eliminate any possibility for other creditors to receive any meaningful recovery in this bankruptcy case.  This prejudice and harm alone warrant denial of the default interest rate.

63.    "Bankruptcy essentially is, after all, a process of equitably adjusting contending creditors' claims and rights, and effectuating a fair distribution of a debtor's property among those creditors." *In re Hollstrom*, 133 B.R. at 541.  Where, as here, allowance of Signature's default interest rate would "sweep up virtually all proceeds in the [Debtor's] estate for the secured creditor, leaving virtually nothing for other creditors," it does not advance the bankruptcy process and must be disallowed. *Id.*

64.    Furthermore, if the default interest is allowed, it will not only impair the Debtor's fresh start, but eliminate it entirely.  The Debtor has obtained take-out financing which is sufficient

---

[2] This amount includes the claim of Xemex, LLC in the amount of $3,379,200.89, which the Debtor disputes.

to satisfy all uncontested claims of unsecured creditors.  If default interest is included, the Debtor will be unable to obtain a fresh start and reorganize its business.

## POINT III

### SIGNATURE IS NOT ENTITLED TO A 3% PREPAYMENT PENALTY RATE

65.    Signature has taken the position that it is entitled to a prepayment penalty of 3% in accordance with the terms of the Note.  *See Senior Lender's Objection to Disclosure Statement* [Docket No. 74] ("Signature Objection"), ¶ 22f.  According to Schedule A to the Note, the prepayment premium is 3% for the period of time from June 1, 2019 through May 31, 2020.[3]  *See* Exhibit A (Schedule A) to Spriopoulos Dec.  Each year thereafter, the prepayment premium lessens by a percentage. *Id.*

66.    The prepayment penalty applicable to May 2022 is 1%.  As such, the Debtor maintains that the prepayment penalty is 1%.[4]

## NOTICE AND NO PREVIOUS APPLICATION

67.    This Motion, along with the notice of hearing, is being filed with the Court and served on more than 30 days' notice to: (i) Signature; (ii) the Office of the United States Trustee; and (iii) all parties who filed a notice of appearance in these cases. The Debtor submits that no further notice is required.

68.    No previous request for the relief sought herein has been made to this or any other Court.

---

[3] There is no basis for applying the 3% prepayment premium.  The loan was accelerated on March 9, 2021.  As such, even if the date of acceleration governed (instead of the date of payment), at best, Signature would be entitled to a prepayment premium of 2%.  *See* Exhibit A (Schedule A) to Spriopoulos Dec. ("from June 1, 2020 through the last day of May 2021 the prepayment premium shall be 2%").

[4] The Debtor reserves its right to raise issue with whether Signature is entitled to prepayment interest whatsoever based upon the terms of the Note.  *See* Exhibit A (Schedule A) to Spriopoulos Dec.  ("Unless the Borrower elects the option to fix the interest rate pursuant to Paragraph 1 of Schedule B, there shall be no prepayment premium for prepayment made after March 1, 2022.")

**WHEREFORE**, the Debtor respectfully requests the relief requested herein.

Dated:  New York, New York
        May 26, 2022

                              **NORRIS McLAUGHLIN, P.A.**


                              /s/ *Melissa A. Peña*
                              Melissa A. Peña, Esq.
                              7 Times Square, 21st Floor
                              New York, New York  10036
                              Phone:  212-808-0700
                              Fax:  212-808-0844
                              mapena@norris-law.com
                              *Counsel for the Debtor*

**Exhibit A**

**Proposed Order**

Melissa A. Peña, Esq.
**NORRIS McLAUGHLIN, P.A.**
7 Times Square, 21st Floor
New York, New York  10036
Phone:  212-808-0700
Fax:  212-808-0844
mapena@norris-law.com
*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X

In re:                                                          Chapter 11

SPL PARTNERS, LLC,                          Case No. 21-42248 (ESS)

                              Debtor.

---------------------------------------------------------X

**ORDER APPROVING MOTION BY SPL PARTNERS LLC, THE DEBTOR/DEBTOR-IN-POSSESSION, FOR ENTRY OF AN ORDER, PURSUANT TO RULE 3007 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND 11 U.S.C. §§ 105 AND 502, REDUCING THE CLAIM OF SIGNATURE LIEN ACQUISITIONS III LLC**

Upon the application (the "Motion") of SPL Partners, LLC (the "Debtor"), the Debtor and

Debtor in Possession, for an Order pursuant to Rule 3007 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and 11 U.S.C. §§ 105(a) and 502(a) (the "Bankruptcy Code"),

reducing Claim No. 1 filed by Signature Lien Acquisitions III LLC ("Signature" or "Lender"); and

the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to

28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the requested relief being a core

proceeding pursuant to 28 U.S.C. §§ 1408 and 1409; and that adequate and appropriate notice has

been given under the circumstances and it appearing that no further notice is necessary; and the

Court having reviewed the Motion and having held a hearing to consider the relief requested in the

Motion (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested herein is in the best interests of the Debtor, its estate, and creditors; and upon all of the proceedings had before the Court and after due deliberation finding good and sufficient cause appearing therefor, it is hereby

**ORDERED** that except as otherwise provided herein, the Motion is granted in its entirety; and it is further

**ORDERED** that Signature is entitled to default interest solely for the period from January 1, 2021, the date the Debtor defaulted on the subject loan, through April 6, 2021, the date the Debtor first requested a payoff statement for the loan; and it is further

**ORDERED** that Signature shall have an allowed claim of $ 17,344,926.90; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated:  Brooklyn, New York
_____, 2022

_____
HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Signature's Proof of Claim**

**Fill in this information to identify the case:**

Debtor 1    SPL Partners LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Eastern District of New York

Case number   121-42248

## Official Form 410

# Proof of Claim

12/15

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents.** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

### Part 1:  Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Signature Lien Acquisitions III LLC <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☐ No <br> ☑ Yes.  From whom? _____ |

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Kevin J. Nash, Esq., GWFG <br> Name <br><br> 1501 Broadway, 22nd Floor <br> Number    Street <br><br> New York    NY    10036 <br> City      State      ZIP Code <br><br> Contact phone  212-309-6944 <br><br> Contact email  knash@gwfglaw.com | Name <br><br> Number    Street <br><br> City      State      ZIP Code <br><br> Contact phone _____ <br><br> Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☑ No <br> ☐ Yes.  Claim number on court claims registry (if known) _____    Filed on ____ / ____ / ____ <br>                                               MM  / DD  / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes.  Who made the earlier filing? _____ |

**Part 2:**  **Give Information About the Claim as of the Date the Case Was Filed**

6. Do you have any number you use to identify the debtor?

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. How much is the claim?  $20,680,550.

Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

First Mortgage Lien - see Statement attached

9. Is all or part of the claim secured?

☐ No

☑ Yes.  The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection:      Recorded Mortgage - see Statement attached

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:              $_____

Amount of the claim that is secured:    $20,680,550

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

10. Is this claim based on a lease?

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

11. Is this claim subject to a right of setoff?

☑ No

☐ Yes. Identify the property: _____

Official Form 410                                     Proof of Claim                                          page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  <u>11/01/2021</u>
                        MM / DD / YYYY

/s/ Tim Ziss
_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Tim Ziss | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | | | |
| Company | Allied Properties LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 9322 Third Avenue, Suite 502 | | |
| | Number         Street | | |
| | Brooklyn | NY | 11209 |
| | City | State | ZIP Code |
| Contact phone | 917-642-4242 | Email | TimZiss@alliedproperties.com |

## Exhibit C

**Affidavit of Mitchel Baffa**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re: SPL Partners, LLC,

Chapter 11

Case No.: 21-42248 (ESS)

                              Debtor.
---------------------------------------------------------X

## AFFIDAVIT OF MITCHEL A. BAFFA

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

**MITCHEL A. BAFFA**, being duly sworn hereby deposes and says:

1.      I am senior vice president and senior asset disposition officer of New York

Community Bank ("NYCB") and as such I am fully familiar with the facts and circumstances

alleged herein.

2.      On April 19, 2021, NYCB sold the loan to SPL Partners, LLC (the "Debtor")

memorized by, among other things, Consolidation, Modification and Extension Agreement,

Assignment of Leases and Rent and Security Agreement dated May 22, 2017 (the "Loan").

3.      As part of the loan sale agreement,  NYCB provided Signature Lien Acquisitions

III LLC ("Signature") the following documents .    i)  Payment due details dated 4/14/2021, ii)

Payment history dated 4/14/2021 and payoff inquiry dated 4/14/21. ( collectively " Loan

Balance Information".) Copies of these documents are annexed hereto as Exhibits "A", "B" and

"C".

4.      NYCB did not calculate the default interest that was accruing on this loan as part

of the Loan Balance Information provided to Signature.

5.      NYCB accelerated the note based upon the monetary default on January 1, 2021.

Default interest, pursuant to the loan documents, automatically  began to accrue on that date.

NYCB did not make any calculations concerning default interest with regard to the loan sale to Signature.

6.      On April 9, 2021, the Debtor requested a pay- off letter.  Under no circumstances did NYCB hold back the issuance of the payoff letter at the request of Signature or any other party.

7.      Furthermore, Signature never contacted me or to the best of my knowledge, any other employee of NYCB to request that the bank delay or deny the production of a payoff letter.

8.      Upon information and belief, a request to not provide the payoff letter to the Debtor was made to NYCB's counsel and counsel rejected that request as being wholly improper._A copy of the chain of email communications is annexed hereto as Exhibit D

Dated: New York, New York
        May _23ᵈ_, 2022

                                        NEW YORK COMMUNITY BANK

                                        By: _____
                                             Mitchel A. Baffa

Sworn to on the _23ᵈ_ day
of May 2022.

_____
Notary Public

SANDRA KAHAK
Notary Public - State of New York
NO. 01KA6197908
Qualified in New York County
My Commission Expires _12/8/24_

EXHIBIT A

Bank:   New York Community Bank
Report::  LM_PDUE

Run Date :  04-14-2021
Post Date :  04-14-2021
Page :  1 of 1

Loan Bill Payment Due

** DO NOT MAIL **
SEL PARTNERS LLC
C/O ACC REAL ESTATE SERVICE INC
155 1ST STREET
MINEOLA NY  11501-4055

Account Number : 110694184

Major       :  Commercial Loan
Minor       :  Charge Off And Repo 5399
Rate Of Interest :  3.875%
Principal Balance :  15,560,099.74

Current Due Date :   04-01-2021
Amount Past Due :   320,736.83

Principal Due    :     26,872.72
Interest Due     :    200,984.63
Escrow Due       :    226,664.48
Late Charge/Fee Due :    21,382.44
Other Charges Due :         0.00
Total Amount Due :    475,904.27

--------Payment(s) Due

| Due Date | Balance Category | Amount |
|---|---|---|
| 12-01-2020 | Late Charge Balance | 5,345.61 |
| | Sub Total | 5,345.61 |
| 01-01-2021 | Late Charge Balance | 5,345.61 |
| | Note Interest | 50,246.16 |
| | Escrow Balance | 56,666.12 |
| | Sub Total | 112,257.89 |
| 02-01-2021 | Late Charge Balance | 5,345.61 |
| | Note Interest | 50,246.15 |
| | Escrow Balance | 56,666.12 |
| | Sub Total | 112,257.88 |
| 03-01-2021 | Late Charge Balance | 5,345.61 |
| | Note Interest | 50,246.16 |
| | Escrow Balance | 56,666.12 |
| | Sub Total | 112,257.89 |
| 04-01-2021 | Note Interest | 50,246.16 |
| | Note Balance | 26,872.72 |
| | Escrow Balance | 56,666.12 |
| | Sub Total | 133,785.00 |
| | Total | 475,904.27 |

**EXHIBIT B**

SPL PARTNERS LLC
C/O Acc Real Estate Service Inc
155 1st Street
Mineola NY 11501-4055

-------------------------------------- Transaction History Account Number 110694184 --------------------------------------
03-31-2000 to 04-21-2021

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| New Loan Disbursement   Due Da 05-22 2017 | | 05-25-2017 | | Note Balance | 16400000.00 | 16400000.00 |
| Interest Receipt    Due Date:   05-25-2017 | | 05-25-2017 | | Note Interest | -17652.78 | |
| Escrow Receipt    Due Date:  07 05-25-2017 | | 05-25-2017 | | Escrow Balance | 109951.80 | 109951.80 |
| Regular Payment   Due Date:  0 07-14-2017 | | 07-14-2017 | | Note Interest (Excess) | -52958.33 | |
| | | | | Note Balance (Excess) | -24160.55 | 16375839.45 |
| | | | | Escrow Balance (Excess) | 54975.90 | 164927.70 |
| | | | | Total | 132094.78 | |
| Regular Payment   Due Date:  0 08-14-2017 | | 08-14-2017 | | Note Interest (Excess) | -52880.31 | |
| | | | | Note Balance (Excess) | 24238.57 | 16351600.88 |
| | | | | Escrow Balance (Excess) | 57471.12 | 222398.82 |
| | | | | Total | 134590.00 | |
| Regular Payment   Due Date:  0 09-14-2017 | | 09-14-2017 | | Note Interest (Excess) | -52802.04 | |
| | | | | Note Balance (Excess) | -24316.84 | 16327284.04 |
| | | | | Escrow Balance (Excess) | 57471.12 | 279869.94 |
| | | | | Total | 134590.00 | |
| Regular Payment   Due Date:  1 10-16-2017 | | 10-16-2017 | | Note Interest (Excess) | -52723.52 | |
| | | | | Note Balance (Excess) | -24395.36 | 16302888.68 |
| | | | | Escrow Balance (Excess) | 57471.12 | 337341.06 |
| | | | | Total | 134590.00 | |
| Regular Payment   Due Date:  1 11-14-2017 | | 11-14-2017 | | Note Interest (Excess) | -52644.74 | |
| | | | | Note Balance (Excess) | -24474.14 | 16278414.54 |
| | | | | Escrow Balance (Excess) | 57471.12 | 394812.18 |
| | | | | Total | 134590.00 | |
| Regular Payment   Due Date:  1 12-14-2017 | | 12-14-2017 | | Note Interest (Excess) | -52565.71 | |
| | | | | Note Balance (Excess) | -24553.17 | 16253861.37 |
| | | | | Escrow Balance (Excess) | 57471.12 | 452283.30 |
| | | | | Total | 134590.00 | |
| Escrow Disbursement   Due Date 12-14-2017 | | 12-14-2017 | | Escrow Balance | -340914.34 | 111368.96 |
| Regular Payment   Due Date:  0 01-16-2018 | | 01-16-2018 | | Note Interest (Excess) | -52486.43 | |
| | | | | Note Balance (Excess) | -24632.45 | 16229228.92 |
| | | | | Escrow Balance (Excess) | 57471.12 | 168840.08 |
| | | | | Total | 134590.00 | |
| Regular Payment   Due Date:  0 02-14-2018 | | 02-14-2018 | | Note Interest (Excess) | -52406.89 | |
| | | | | Note Balance (Excess) | -24711.99 | 16204516.93 |
| | | | | Escrow Balance (Excess) | 57471.12 | 226311.20 |
| | | | | Total | 134590.00 | |
| Regular Payment   Due Date:  0 03-14-2018 | | 03-14-2018 | | Note Interest (Excess) | -52327.09 | |

SPL PARTNERS LLC
C/O Acc Real Estate Service Inc
155 1st Street
Mineola NY 11501-4055

----------------- ----------------- Transaction History Account Number 110694184-----------------------------------------
03-31-2000 to 04-21-2021

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| | | | | Note Balance (Excess) | -24791.79 | 16179725.14 |
| | | | | Escrow Balance (Excess) | 57471.12 | 283782.32 |
| | | | | Total | 134590.00 | |
| Regular Payment | Due Date: 0 | 04-16-2018 | 04-16-2018 | Note Interest (Excess) | -52247.03 | |
| | | | | Note Balance (Excess) | -24871.85 | 16154853.29 |
| | | | | Escrow Balance (Excess) | 57471.12 | 341253.44 |
| | | | | Total | 134590.00 | |
| Regular Payment | Due Date: 0 | 05-14-2018 | 05-14-2018 | Note Interest (Excess) | -52166.71 | |
| | | | | Note Balance (Excess) | -24952.17 | 16129901.12 |
| | | | | Escrow Balance (Excess) | 57471.12 | 398724.56 |
| | | | | Total | 134590.00 | |
| Regular Payment | Due Date: 0 | 06-14-2018 | 06-14-2018 | Note Interest (Excess) | -52086.14 | |
| | | | | Note Balance (Excess) | -25032.74 | 16104868.38 |
| | | | | Escrow Balance (Excess) | 57471.12 | 456195.68 |
| | | | | Total | 134590.00 | |
| Escrow Disbursement | Due Date | 06-15-2018 | 06-15-2018 | Escrow Balance | -347211.18 | 108984.50 |
| Regular Payment | Due Date: 0 | 07-16-2018 | 07-16-2018 | Note Interest (Excess) | -52005.30 | |
| | | | | Note Balance (Excess) | -25113.58 | 16079754.80 |
| | | | | Escrow Balance (Excess) | 57471.12 | 166455.62 |
| | | | | Total | 134590.00 | |
| Regular Payment | Due Date: 0 | 08-14-2018 | 08-14-2018 | Note Interest (Excess) | -51924.21 | |
| | | | | Note Balance (Excess) | -25194.67 | 16054560.13 |
| | | | | Escrow Balance (Excess) | 57868.12 | 224323.74 |
| | | | | Total | 134987.00 | |
| Regular Payment | Due Date: 0 | 09-14-2018 | 09-14-2018 | Note Interest (Excess) | -51842.85 | |
| | | | | Note Balance (Excess) | -25276.03 | 16029284.10 |
| | | | | Escrow Balance (Excess) | 57868.12 | 282191.86 |
| | | | | Total | 134987.00 | |
| Regular Payment | Due Date: 1 | 10-15-2018 | 10-15-2018 | Note Interest (Excess) | -51761.23 | |
| | | | | Note Balance (Excess) | -25357.64 | 16003926.45 |
| | | | | Escrow Balance (Excess) | 57868.12 | 340059.98 |
| | | | | Total | 134987.00 | |
| Regular Payment | Due Date: 1 | 11-14-2018 | 11-14-2018 | Note Interest (Excess) | -51679.35 | |
| | | | | Note Balance (Excess) | -25439.53 | 15978486.92 |
| | | | | Escrow Balance (Excess) | 57868.12 | 397928.10 |
| | | | | Total | 134987.00 | |

SPL PARTNERS LLC
C/O Acc Real Estate Service Inc
155 1st Street
Mineola NY 11501-4055

------------------- ------------------- Transaction History Account Number 110694184-------------------------------
03-31-2000 to 04-21-2021

| Description | | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|---|
| Regular Payment | Due Date: 1 | 12-14-2018 | 12-14-2018 | | Note Interest (Excess) | -51597.20 | |
| | | | | | Note Balance (Excess) | -25521.68 | 15952965.24 |
| | | | | | Escrow Balance (Excess) | 57868.12 | 455796.22 |
| | | | | | Total | 134987.00 | |
| Escrow Disbursement | Due Date 12-18-2018 | 12-18-2018 | | | Escrow Balance | -347211.18 | 108585.04 |
| Regular Payment | Due Date: 0 | 01-14-2019 | 01-14-2019 | | Note Interest (Excess) | -51514.78 | |
| | | | | | Note Balance (Excess) | -25604.10 | 15927361.14 |
| | | | | | Escrow Balance (Excess) | 57868.12 | 166453.16 |
| | | | | | Total | 134987.00 | |
| Regular Payment | Due Date: 0 | 02-15-2019 | 02-15-2019 | | Note Interest (Excess) | -51432.10 | |
| | | | | | Note Balance (Excess) | -25686.78 | 15901674.36 |
| | | | | | Escrow Balance (Excess) | 57868.12 | 224321.28 |
| | | | | | Total | 134987.00 | |
| Regular Payment | Due Date: 0 | 03-15-2019 | 03-15-2019 | | Note Interest (Excess) | -51349.16 | |
| | | | | | Note Balance (Excess) | -25769.72 | 15875904.64 |
| | | | | | Escrow Balance (Excess) | 57868.12 | 282189.40 |
| | | | | | Total | 134987.00 | |
| Regular Payment | Due Date: 0 | 04-12-2019 | 04-12-2019 | | Note Interest (Excess) | -51265.94 | |
| | | | | | Note Balance (Excess) | -25852.94 | 15850051.70 |
| | | | | | Escrow Balance (Excess) | 57868.12 | 340057.52 |
| | | | | | Total | 134987.00 | |
| Regular Payment | Due Date: 0 | 05-13-2019 | 05-13-2019 | | Note Interest (Excess) | -51182.46 | |
| | | | | | Note Balance (Excess) | -25936.42 | 15824115.28 |
| | | | | | Escrow Balance (Excess) | 57868.12 | 397925.64 |
| | | | | | Total | 134987.00 | |
| Regular Payment | Due Date: 0 | 06-12-2019 | 06-12-2019 | | Note Interest (Excess) | -51098.71 | |
| | | | | | Note Balance (Excess) | -26020.17 | 15798095.11 |
| | | | | | Escrow Balance (Excess) | 57868.12 | 455793.76 |
| | | | | | Total | 134987.00 | |
| Escrow Disbursement | Due Date 06-18-2019 | 06-18-2019 | | | Escrow Balance | -357027.06 | 98766.70 |
| Regular Payment | Due Date: 0 | 07-12-2019 | 07-12-2019 | | Note Interest (Excess) | -51014.68 | |
| | | | | | Note Balance (Excess) | -26104.20 | 15771990.91 |
| | | | | | Escrow Balance (Excess) | 57868.12 | 156634.82 |
| | | | | | Total | 134987.00 | |
| Regular Payment | Due Date: 0 | 08-12-2019 | 08-12-2019 | | Note Interest (Excess) | -50930.39 | |
| | | | | | Note Balance (Excess) | -26188.49 | 15745802.42 |
| | | | | | Escrow Balance (Excess) | 59504.12 | 216138.94 |

SPL PARTNERS LLC
C/O Acc Real Estate Service Inc
155 1st Street
Mineola NY 11501-4355

`----- -- ----------------- ---------- ` Transaction History Account Number 110654184`------------------------------------------`
03-31-2000 to 04-21-2021

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| | | | | Total | 136623.00 | |
| Regular Payment   Due Date:  0 | 09-12-2019 | 09-12-2019 | | Note Interest (Excess) | 50845.82 | |
| | | | | Note Balance (Excess) | -26273.06 | 15719529.36 |
| | | | | Escrow Balance (Excess) | 59504.12 | 275643.06 |
| | | | | Total | 136623.00 | |
| Regular Payment   Due Date:  1 | 10-15-2019 | 10-15-2019 | | Note Interest (Excess) | -50760.98 | |
| | | | | Note Balance (Excess) | -26357.90 | 15693171.46 |
| | | | | Escrow Balance (Excess) | 59504.12 | 335147.18 |
| | | | | Total | 136623.00 | |
| Regular Payment   Due Date:  1 | 11-12-2019 | 11-12-2019 | | Note Interest (Excess) | -50675.87 | |
| | | | | Note Balance (Excess) | -26443.01 | 15666728.45 |
| | | | | Escrow Balance (Excess) | 59504.12 | 394651.30 |
| | | | | Total | 136623.00 | |
| Regular Payment   Due Date:  1 | 12-12-2019 | 12-12-2019 | | Note Interest (Excess) | -50590.48 | |
| | | | | Note Balance (Excess) | -26528.40 | 15640200.05 |
| | | | | Escrow Balance (Excess) | 59504.12 | 454155.42 |
| | | | | Total | 136623.00 | |
| Escrow Disbursement   Due Date 12-18-2019 | 12-18-2019 | | | Escrow Balance | -358589.10 | 95566.32 |
| Regular Payment   Due Date:  0 | 01-13-2020 | 01-13-2020 | | Note Interest (Excess) | -50504.81 | |
| | | | | Note Balance (Excess) | -26614.07 | 15613585.98 |
| | | | | Escrow Balance (Excess) | 59504.12 | 155070.44 |
| | | | | Total | 136623.00 | |
| Regular Payment   Due Date:  0 | 02-12-2020 | 02-12-2020 | | Note Interest (Excess) | -50418.87 | |
| | | | | Note Balance (Excess) | -26700.01 | 15586885.97 |
| | | | | Escrow Balance (Excess) | 59504.12 | 214574.56 |
| | | | | Total | 136623.00 | |
| Regular Payment   Due Date:  0 | 03-12-2020 | 03-12-2020 | | Note Interest (Excess) | -50332.65 | |
| | | | | Note Balance (Excess) | -26786.23 | 15560099.74 |
| | | | | Escrow Balance (Excess) | 59504.12 | 274078.68 |
| | | | | Total | 136623.00 | |
| Escrow Receipt   Due Date:  05 | 05-21-2020 | 05-21-2020 | | Escrow Balance | 59504.12 | 333582.80 |
| Escrow Receipt   Due Date:  05 | 05-21-2020 | 05-21-2020 | | Escrow Balance | 59504.12 | 393086.92 |
| Regular Payment   Due Date:  0 | 06-11-2020 | 06-11-2020 | | Note Interest (Excess) | -50246.16 | |
| | | | | Note Balance (Excess) | -9257.96 | 15550841.78 |
| | | | | Total | 59504.12 | |
| Payment Reversal   Due Date:  06 | 06-11-2020 | 06-11-2020 | | Note Interest | 50246.16 | |

SPL PARTNERS LLC
C/O Acc Real Estate Service Inc
155 1st Street
Mineola  NY  11501-4055

```
------------------------------ ------ Transaction History Account Number 110694184-- ------------------------------
                                       03-31-2000 to 04-21-2021
```

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| | | | | Note Balance | 9257.96 | 15560099.74 |
| | | | | Total | -59504.12 | |
| Escrow Receipt    Due Date: 07 | 06-11-2020 | 06-11-2020 | | Escrow Balance | 59504.12 | 452591.04 |
| Escrow Disbursement    Due Date | 06-18 | 2020 | 06-18-2020 | Escrow Balance | -540000.02 | 112591.02 |
| Escrow Receipt    Due Date: 07 | 07-10-2020 | 07-10-2020 | | Escrow Balance | 59504.12 | 172095.14 |
| Escrow Receipt    Due Date: 08 | 08-14-2020 | 08-14-2020 | | Escrow Balance | 56666.12 | 228761.26 |
| Regular Payment | | 09-11-2020 | 09-14-2020 09-01-2020 | Escrow Balance | 56666.12 | 285427.38 |
| Regular Payment | | 10-05-2020 | 10-05-2020 10-01-2020 | Note Interest | -50246.15 | |
| | | | | Note Balance | -26872.73 | 15533227.01 |
| | | | | Escrow Balance | 29793.39 | 315220.77 |
| | | | | Total | 106912.27 | |
| Payment Reversal | | 10-05-2020 | 10-08-2020 10-01-2020 | Note Interest | 50246.15 | |
| | | | | Note Balance | 26872.73 | 15560099.74 |
| | | | | Escrow Balance | 29793.39 | 285427.38 |
| | | | | Total | -106912.27 | |
| Unapplied Receipt | | 10-05-2020 | 10-08-2020 | Unapplied Balance | 106912.27 | |
| Late Charge Assessment | | 10-16-2020 | 10-16-2020 | Late Charge Balance | 5345.61 | |
| Regular Payment Oct pmt | | 10-05-2020 | 10-20-2020 10-01-2020 | Note Interest | -50246.15 | |
| | | | | Escrow Balance | 56666.12 | 342093.50 |
| | | | | Total | 106912.27 | |
| Late Charge Assessment Reversa | | 10-05-2020 | 10-20-2020 | Late Charge Balance | -5345.61 | |
| Unapplied Disbursement OCT Pmt | | 10-05-2020 | 10-20-2020 | Unapplied Balance | -106912.27 | |
| Regular Payment Transfer from | | 11-13-2020 | 11-13-2020 11-01-2020 | Note Interest | -50246.15 | |
| | | | | Escrow Balance | 56666.12 | 398759.62 |
| | | | | Total | 106912.27 | |
| Regular Payment | | 11-16-2020 | 11-16-2020 | Unapplied Balance (Excess) | 106912.27 | |
| Unapplied Disbursement Pymt re | | 11-17-2020 | 11-17-2020 | Unapplied Balance | -106912.27 | |
| Late Charge Assessment | | 12-16-2020 | 12-16-2020 | Late Charge Balance | 5345.61 | |
| Escrow Tax Disbursement | | 12-18-2020 | 12-18-2020 | Escrow Balance | -350131.94 | 48627.68 |
| Late Charge Assessment | | 01-19-2021 | 01-19-2021 | Late Charge Balance | 5345.61 | |
| Regular Payment Transfer from | | 02-09-2021 | 02-09-2021 12-01-2020 | Note Interest | -50246.16 | |
| | | | | Escrow Balance | 56666.12 | 105293.80 |
| | | | | Total | 106912.28 | |
| Late Charge Assessment | | 02-16-2021 | 02-16-2021 | Late Charge Balance | 5345.61 | |
| Late Charge Assessment | | 03-16-2021 | 03-16-2021 | Late Charge Balance | 5345.61 | |

**EXHIBIT C**

**fiserv.**

110694184
Charge Off And Repo 5399/Commercial Loan
Primary owner:    Sol Partners LLC (Singl...
Last Payment Date: 02-09-2021

Interest Rate    3.87500
Amount Due:    475,904.27
Next Payment Date: 01-01-2021
Note Balance:    15,510,325.74

Status:    Active (Delinquent)
Antic. Payoff:    06-05-2027

Loan - 110694184

## Payoff Inquiry

Payoff    Print    Restrictions    Payoff Quote History

### Search Criteria

Account Number    110694184

Effective Date    04-14-2021    Query    Clear

### Payoff Information

Per Diem / Base    1,674.87    360
Escrow Per Diem / Base
Operating Fund Per Diem / Base

Due Date    01-01-2021
Payoff Interest Accrued Thru Date    04-14-2021
Maturity Date

Current Rate    3.87500
Rate Type    Fixed
Customer Keyword

### Quote Information

Create Payoff Quote    Requestor Detail

Expiration Date

Save Quote

### Closing Attorney

Closing Attorney

### Balance Details

| Balance Description | Due Institution | Due Customer | Institution | Processing Status | Reverse Charge |
|---|---|---|---|---|---|
| Note Interest | 224,432.53 | | | Payoff | |
| Note Balance | 15,560,899.74 | | | Payoff | L |
| Escrow Balance | (106,293.53) | | | Applied | |
| Late Charge Balance | 21,332.44 | | | Payoff | |
| Deferred Cost | | | | Expense | |
| | | | (3,929.20) | | |

---

**fiserv.**

110694184
Charge Off And Repo 5399/Commercial Loan
Primary owner:    Sol Partners LLC (Singl...
Last Payment Date: 02-09-2021

Interest Rate    3.87500
Amount Due:    475,904.27
Next Payment Date: 01-01-2021
Note Balance:    15,510,325.74

Status:    Active (Delinquent)
Antic. Payoff:    06-05-2027

Loan - 110694184

## Payoff Inquiry

Payoff    Print    Restrictions    Payoff Quote History

### Search Criteria

Account Number    110694184

Effective Date    04-14-2021    Query    Clear

### Payoff Information

Per Diem / Base    1,674.87    360
Escrow Per Diem / Base
Operating Fund Per Diem / Base

Due Date    01-01-2021
Payoff Interest Accrued Thru Date    04-14-2021
Maturity Date

Current Rate    3.87500
Rate Type    Fixed
Customer Keyword

### Quote Information

Create Payoff Quote    Requestor Detail

Expiration Date

Save Quote

### Closing Attorney

Closing Attorney

### Balance Details

| Balance Description | Due Institution | Due Customer | Institution | Processing Status | Reverse Charge |
|---|---|---|---|---|---|
| Late Charge Balance | 21,332.44 | | | Payoff | |
| Deferred Cost | | | (3,929.20) | Expense | |
| COVID Deferment Charge | 309,476.95 | | | Payoff | |
| Total | 16,002,698.17 | | | | |

**EXHIBIT D**

**Roseman, Matthew**

| | |
|---|---|
| **From:** | Fahy, Margaret |
| **Sent:** | Friday, April 9, 2021 12:06 PM |
| **To:** | 'Yaron Kornblum' |
| **Subject:** | RE: [EXTERNAL] |
| **Attachments:** | [EXTERNAL] FW: SPL |

Ron,

Please point me to the language you are relying on as to the date of default. Also, as we discussed earlier today, Section 5 of the Mortgage Loan Purchase Agreement (MLPA) specifically permits New York Community Bank to exercise all rights and remedies available to it, communicate with the Borrower or Borrower's attorneys and accept payment from the Borrower in satisfaction of the loan (as such term is defined in the MLPA). As you are aware, the Borrower's attorney has requested a payoff letter which is in the process of being prepared. While the Bank is agreeable to sharing a copy of the payoff letter with you as a courtesy in light of the impending note sale, the payoff letter is not subject to your client's approval.

Finally, per the attached email forwarded to me this morning, the Borrower's attorney has requested a payoff letter good through May 1.

**Margaret Fahy**
Partner
**Cullen and Dykman LLP**
44 Wall Street
New York, New York 10005
T: 212.510.2212 | F: 212.825.1531
E: MFahy@cullenllp.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

**From:** Yaron Kornblum <yaron.kornblum@rivkin.com>
**Sent:** Friday, April 9, 2021 10:07 AM
**To:** Fahy, Margaret <MFahy@cullenllp.com>
**Subject:** [EXTERNAL]

Magy, the default occurred when they stopped making payments priori to the forebearance agreement. Also, my client is going to be closing early next week so why can't we hold off on payoff. Don't we have time from the time of their request? Also, the Borrower did not ask for a payoff through a date certain.

Sent from my iPhone. Please excuse any spelling mistakes.



Yaron Kornblum
Partner
926 RXR Plaza, Uniondale, NY 11556-0926
D 516.357.3082 T 516.357.3000 F 516.357.3333

477 Madison Avenue, 20th Fl. New York, NY 10022-5843
D 516.357.3082 T 212.455.9555 F 516.357.3333
yaron.kornblum@rivkin.com

Please note to reduce the quantity of paper coming into our offices during the Coronavirus crisis when our staff is working remotely, we request that all communications with this office should be through electronic means. Your cooperation is appreciated.

 RIVKIN RADLER

Yaron Kornblum
Partner
926 RXR Plaza, Uniondale, NY 11556-0926
D 516.357.3082 T 516.357.3000 F 516.357.3333
yaron.kornblum@rivkin.com
www.rivkinradler.com

NOTICE: This message may contain information that is confidential or privileged. If you are not the intended recipient, please advise the sender immediately and delete this message. See: http://www.rivkinradler.com/disclaimer-electronic-communications/ for further information on confidentiality.

**Roseman, Matthew**

| | |
|---|---|
| **From:** | Delfoe, Lisa |
| **Sent:** | Friday, April 9, 2021 9:26 AM |
| **To:** | Fahy, Margaret |
| **Cc:** | Mitchel Baffa |
| **Subject:** | [EXTERNAL] FW: SPL |

LISA DELFOE
Senior Vice President

 New York Community Bank
102 Duffy Avenue, Hicksville, NY 11801
Phone: 516-500-6593 | Fax: 516-500-6783

**From:** Peter Rivera [mailto:peter@richterrestrepo.com]
**Sent:** Tuesday, April 6, 2021 8:24 PM
**To:** Lisa Delfoe - Office of Asset Rev,Rec & Disp <Lisa.Delfoe@mynycb.com>
**Subject:** RE: SPL

**CAUTION:** This email originated from outside your organization. Do not click links or open attachments unless you recognize the sender know that the content is safe.

Hi Ms. Delfoe,

Please forward a payoff letter as of May 1, 2021.  Also, please advise if the bank is willing to enter into a forbearance agreement or loan medication.

Thank you,

Peter M. Rivera, Esq.
Partner
55 Broadway, 3rd Floor
New York, N.Y. 10006
P: 347.745.0375, Ext. 3
E: Peter@RichterRestrepo.com
www.RichterRestrepo.com



1

**\*\*\*** The information contained in this e-mail communication may be confidential and legally privileged and is for the use of the intended recipient only. If you are not the intended recipient, or an authorized employee or agent responsible for delivering it to the intended recipient, the dissemination, distribution or reproduction of this communication or its contents (including any attachments) is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or reply e-mail and permanently delete it and any copies from your system and files.

**From:** Lisa Delfoe <Lisa.Delfoe@mynycb.com>
**Sent:** Tuesday, April 6, 2021 6:24 PM
**To:** Peter Rivera <peter@richterrestrepo.com>
**Subject:** SPL

Mr. Rivera,

Please advise the date that funds will be available to repay the loan so that the payoff can be computed accordingly. Will there be a capital call, refinance or sale of the property ? If the loan is not being paid off, perhaps the request for a payoff letter is premature.

LISA DELFOE
Senior Vice President



New York Community Bank
102 Duffy Avenue, Hicksville, NY 11801
Phone: 516-500-6593 | Fax: 516-500-6783

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, PROPRIETARY AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. No confidentiality or privilege is waived or lost by any improper transmission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding or copying of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by e-mail or telephone, and delete the original message and any electronic or printed copies of this message immediately. Thank you. New York Community Bancorp, Inc. ("Company") reserves the right to monitor all e-mail communications sent through its networks. Any views expressed in this message are those of the individual sender, unless the message states otherwise and the sender is authorized to communicate on behalf of the Company or one of its subsidiaries.

**Roseman, Matthew**

| | |
|---|---|
| **From:** | Fahy, Margaret |
| **Sent:** | Monday, April 12, 2021 5:15 PM |
| **To:** | 'Yaron Kornblum' |
| **Cc:** | 'Mitchel Baffa'; 'Jake Handelsman' |
| **Subject:** | RE: [EXTERNAL] New York Community Bank to Signature Lien Acquisitions II, LLC / SPL Partners LLC |

Ron,

As a reminder, and as I previously pointed out, Section 5 of the Mortgage Loan Purchase Agreement (MLPA) specifically permits New York Community Bank to exercise all rights and remedies available to it, communicate with the Borrower or Borrower's attorneys and accept payment from the Borrower in satisfaction of the loan (as such term is defined in the MLPA). As you are aware, the Borrower's attorney has requested a payoff letter which is in the process of being prepared. While the Bank is agreeable to sharing a copy of the payoff letter with you as a courtesy in light of the impending note sale, the payoff letter is not subject to your client's approval.

You've indicated an intention to close early this week. Kindly advise to your availability for closing on either Tuesday April 13 or Wednesday April 14.

Thanks,

**Margaret Fahy**
Partner
**Cullen and Dykman LLP**
44 Wall Street
New York, New York 10005
T: 212.510.2212 | F: 212.825.1531
E: MFahy@cullenllp.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

**From:** Yaron Kornblum <yaron.kornblum@rivkin.com>
**Sent:** Sunday, April 11, 2021 6:37 PM
**To:** Fahy, Margaret <MFahy@cullenllp.com>
**Cc:** Mitchel Baffa <Mitchel.Baffa@mynycb.com>; Jake Handelsman <JHandelsman@meridiancapital.com>
**Subject:** RE: [EXTERNAL] New York Community Bank to Signature Lien Acquisitions II, LLC / SPL Partners LLC

Magy, please see copy of the lawsuit between the partners for fraud. It is evident the default occurred prior to January of this year. Therefore, I respectfully submit that no payoff letter be sent to the Borrower until my client closes early this week and the letter is issued by my client. We do not want NYCB to issue an incorrect payoff letter that prejudices my client's position. Please be guided accordingly.

Please note to reduce the quantity of paper coming into our offices during the Coronavirus crisis when our staff is working remotely, we request that all communications with this office should be through electronic means. Your cooperation is appreciated.



**Yaron Kornblum**
Partner
926 RXR Plaza, Uniondale, NY 11556-0926
D 516.357.3082 T 516.357.3000 F 516.357.3333
yaron.kornblum@rivkin.com
www.rivkinradler.com



Please note to reduce the quantity of paper coming into our offices during the Coronavirus crisis when our staff is working remotely, we request that all communications with this office should be through electronic means. Your cooperation is appreciated.



**Yaron Kornblum**
Partner
926 RXR Plaza, Uniondale, NY 11556-0926
D 516.357.3082 T 516.357.3000 F 516.357.3333
yaron.kornblum@rivkin.com
www.rivkinradler.com



**From:** "Fahy, Margaret" <MFahy@cullenllp.com>
**Date:** Thursday, April 8, 2021 at 2:00 PM
**To:** Yaron Kornblum <yaron.kornblum@rivkin.com>
**Cc:** Mitchel Baffa <Mitchel.Baffa@mynycb.com>
**Subject:** RE: [EXTERNAL] New York Community Bank to Signature Lien Acquisitions II, LLC / SPL Partners LLC

Ron,

Please see attached emails.  NYCB is working on the payoff letter.


**Margaret Fahy**
Partner
**Cullen and Dykman LLP**
44 Wall Street
New York, New York 10005

2

T: 212.510.2212 | F: 212.825.1531
E: MFahy@cullenllp.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

**From:** Yaron Kornblum <yaron.kornblum@rivkin.com>
**Sent:** Thursday, April 8, 2021 11:03 AM
**To:** Fahy, Margaret <MFahy@cullenllp.com>
**Cc:** Mitchel Baffa <Mitchel.Baffa@mynycb.com>
**Subject:** Re: [EXTERNAL] New York Community Bank to Signature Lien Acquisitions II, LLC / SPL Partners LLC

Magy, please send us copies of all communications and a copy of the payoff before anything is sent to the Borrower.
Thanks

Please note to reduce the quantity of paper coming into our offices during the Coronavirus crisis when our staff is working remotely, we request that all communications with this office should be through electronic means. Your cooperation is appreciated.

 RIVKIN RADLER

Yaron Kornblum
Partner
926 RXR Plaza, Uniondale, NY 11556-0926
D 516.357.3082 T 516.357.3000 F 516.357.3333
yaron.kornblum@rivkin.com
www.rivkinradler.com



**From:** "Fahy, Margaret" <MFahy@cullenllp.com>
**Date:** Thursday, April 8, 2021 at 10:23 AM
**To:** Yaron Kornblum <yaron.kornblum@rivkin.com>
**Cc:** Mitchel Baffa <Mitchel.Baffa@mynycb.com>
**Subject:** RE: [EXTERNAL] New York Community Bank to Signature Lien Acquisitions II, LLC / SPL Partners LLC

Thanks, Ron.  As a follow-up to the below, the Borrower's attorney contacted New York Community Bank via email to advise that they are trying to restructure/recapitalize and cure the loan defaults.  I have also received a call from the Borrower's attorney in which he advised that the Borrower would like to cure the loan defaults and pay arrears.  I informed the Borrower's attorney that the loan has been accelerated and the entire indebtedness, plus interest, etc. is due and owing.  The Borrower's attorney requested a payoff letter which the Bank is in the process of preparing.

Please let me know if you have any questions or comments or if you wish to discuss.

Thanks,
Maggie

3

**Margaret Fahy**
Partner
**Cullen and Dykman LLP**
44 Wall Street
New York, New York 10005
T: 212.510.2212 | F: 212.825.1531
E: MFahy@cullenllp.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any
attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain
confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message
has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

From: Yaron Kornblum <yaron.kornblum@rivkin.com>
Sent: Tuesday, April 6, 2021 9:24 PM
To: Fahy, Margaret <MFahy@cullenllp.com>
Subject: Re: [EXTERNAL] New York Community Bank to Signature Lien Acquisitions II, LLC / SPL Partners LLC

Margaret, I have spoken to my client who denies in the entirety that he approached the Borrower or it's representatives.
It's a very small community and the information may have leaked, but not due to my clients actions.
Thank you.

Sent from my iPhone. Please excuse any spelling mistakes.



Yaron Kornblum
Partner
926 RXR Plaza, Uniondale, NY 11556-0926
D 516.357.3082 T 516.357.3000 F 516.357.3333

477 Madison Avenue, 20th Fl. New York, NY 10022-5843
D 516.357.3082 T 212.455.9555 F 516.357.3333
yaron.kornblum@rivkin.com

Please note to reduce the quantity of paper coming into our offices during the Coronavirus crisis when our staff is
working remotely, we request that all communications with this office should be through electronic means. Your
cooperation is appreciated.

 RIVKIN RADLER

Yaron Kornblum
Partner
926 RXR Plaza, Uniondale, NY 11556-0926
D 516.357.3082 T 516.357.3000 F 516.357.3333

yaron.kornblum@rivkin.com
www.rivkinradler.com



On Apr 6, 2021, at 3:35 PM, Fahy, Margaret <MFahy@cullenllp.com> wrote:

Ron,

New York Community Bank has been informed that your client has allegedly contacted either the Borrower or a representative thereof regarding the impending note sale.  As you know, the Mortgage Loan Purchase Agreement between New York Community Bank and Signature Lien Acquisitions III, LLC contains a confidentiality clause which provides, in part:

> "31.    **Confidentiality.** Purchaser agrees that the terms and conditions of this Agreement and the fact of its existence shall be confidential and that Purchaser shall not disclose any of the terms of this Agreement to any third person except legal counsel as necessary for receiving professional advice or services and only upon the direct admonition to such professional that the information is confidential and cannot be disclosed to any other persons.  This requirement of confidentiality is material to Seller, and Purchaser acknowledges that any breach of this confidentiality provision will be a material breach entitling Seller to all remedies at law or in equity, including to obtain all related damages arising from the disclosure of the terms of this Agreement, and the payment and recovery of attorney fees."

Please be guided accordingly.

Margaret Fahy
Partner
**Cullen and Dykman LLP**
44 Wall Street
New York, New York 10005
T: 212.510.2212 | F: 212.825.1531
E: MFahy@cullenllp.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION – DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

From: Fahy, Margaret
Sent: Thursday, April 1, 2021 11:49 PM
To: 'Yaron Kornblum' <yaron.kornblum@rivkin.com>
Subject: RE: [EXTERNAL] New York Community Bank to Signature Lien Acquisitions II, LLC / SPL Partners LLC

Ron,

NYCB does not want to commence a foreclosure action prior to the closing. In addition, as I suspected, they do not want our firm to handle the foreclosure action.

Maggie

**Margaret Fahy**
Partner
**Cullen and Dykman LLP**
44 Wall Street
New York, New York 10005
T: 212.510.2212 | F: 212.825.1531
E: MFahy@cullenllp.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

From: Yaron Kornblum <yaron.kornblum@rivkin.com>
Sent: Tuesday, March 30, 2021 10:12 AM
To: Fahy, Margaret <MFahy@cullenllp.com>
Subject: Re: [EXTERNAL] New York Community Bank to Signature Lien Acquisitions II, LLC / SPL Partners LLC

Magy, please call me when you get a chance. Thanks.
5165261379

Sent from my iPhone. Please excuse any spelling mistakes.



Yaron Kornblum
Partner
926 RXR Plaza, Uniondale, NY 11556-0926
D 516.357.3082 T 516.357.3000 F 516.357.3333

477 Madison Avenue, 20th Fl. New York, NY 10022-5843
D 516.357.3082 T 212.455.9555 F 516.357.3333
yaron.kornblum@rivkin.com

**Please note to reduce the quantity of paper coming into our offices during the Coronavirus crisis when our staff is working remotely, we request that all communications with this office should be through electronic means. Your cooperation is appreciated.**